Bessie Lasky and Jesse L. Lasky v. Commissioner.
Lasky v. Commissioner
Docket Nos. 26396, 26397.
United States Tax Court
1955 Tax Ct. Memo LEXIS 164; 14 T.C.M. (CCH) 953; June 30, 1955
*164 Robert Ash, Esq., 1921 Eye St., N.W., Washington, D.C., for the petitioners. Rollin H. Transue, Esq., for the respondent. HARRON Memorandum Sur Order and Decision HARRON, Judge: Upon the additional evidence introduced at a further hearing in these proceedings, the following additional facts are found: (1) Gradwell Sears was president of Vitagraph Corporation prior to October 1941, which was a subsidiary of Warner Brothers, which provided the film distributing facilities of Warner Brothers. He had complete charge of the distribution of the picture Sergeant York in the United States and its possessions. In October 1941, he left Vitagraph and became executive vice-president of United Artists in charge of worldwide distribution. He held that office during 1942. In 1941 and 1942, Edward C. Raftery was president of United Artists. Sears knew that Lasky had a minority interest in Sergeant York, and that the picture was successful. He recalls that an executive of Warner Brothers lamented the fact that Warner Brothers did not own the entire interest in Sergeant York, and he "knew from advance information that Warner Brothers would very gladly acquire the entire rights in *165 this thing (Sergeant York) if they became available." He did not ever talk to Lasky in regard to purchasing Lasky's interest in Sergeant York. He recommended that Raftery discuss the possibility of acquiring Lasky's interest with Lasky's attorney. (2) Before December 4, 1942, a representative of Lasky visited Warner Brothers' office and obtained some figures which he communicated to Lasky's accountant, James D. Miller, who carried on his accounting practice in New York City. Miller believed, before December 4, 1942, that under Warner Brothers' accounting, more than $805,000 was due Lasky as his share of the receipts of Sergeant York. In October 1942, Miller believed that the picture Sergeant York "had been pretty well exploited domestically"; that there would still be, perhaps, some foreign exploitation; that in all probability there would be a release of restricted funds abroad; and that there would be subsequent runs of the picture. (3) In 1942, Lasky's attorney was secretary of United Artists. (4) Lasky did not know, on December 4, 1942, or before, that United Artists might resell Lasky's interest in Sergeant York to Warner Brothers. Lasky did not advise Warner Brothers that *166 he was going to sell his interest in Sergeant York to United Artists. He never offered his interest for sale to Warner Brothers. Lasky knew that his attorney was negotiating for the sale of his interest in Sergeant York. His attorney was his agent and he left all the details in his attorney's hands. (5) Lasky's attorney approached Raftery In November 1942, and asked him if United Artists would be interested in purchasing Lasky's interest in Sergeant York. Lasky had authorized his attorney to look for a buyer of his interest. Raftery consulted Sears about the offer of Lasky's attorney to sell Lasky's interest in Sergeant York and about the alternative of making a resale of Lasky's interest so as to make a little profit during 1942. Raftery also, before December 4, 1942, spoke to an officer of Warner Brothers, told him that he had an opportunity to buy Lasky's interest in the picture in question, and inquired whether Warner Brothers would be interested in purchasing Lasky's interest if United Artists decided not to keep it. The officer of Warner Brothers to whom Raftery spoke expressed the view that if United Artists bought Lasky's interest, Warner Brothers would like to negotiate *167 with United Artists relative to purchasing Lasky's interest from United Artists. Raftery expressed his desire to make a profit on a resale of Lasky's interest. Raftery did not deal with Lasky. He dealt only with Lasky's attorney. At the time Raftery entered into the contract of December 4, 1942 to purchase Lasky's interest he knew that Lasky was entitled to some distributions of earnings of the picture in question. He had some idea of the amount of the accrued earnings due Lasky. At the time Raftery considered purchasing Lasky's interest, he knew that the picture Sergeant York was not in full distribution; the "big cream" of the distribution had been taken off with the "pre-release" of the picture. He knew that as a picture progresses in distribution, diminishing returns set in and the returns decrease each month, and that at the time United Artists acquired Lasky's interest in Sergeant York, it was in the phase of declining distribution. Raftery's mind was made up from the start that United Artists would resell Lasky's interest in Sergeant York, and before he agreed with Lasky's attorney to purchase Lasky's interest he found out that he could get a purchaser and resell Lasky's interest. *168 He intended making a short profit on a resale of Lasky's interest. For Bessie Lasky: ORDERED and DECIDED: That there is a deficiency in income tax for the year 1943, in the amount of $224,722.55. For Jesse L. Lasky.. ORDERED and DECIDED: That there is a deficiency in income tax for the year 1943, in the amount of $224,515.14.