GARNAC GRAIN CO., INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Garnac Grain Co. v. Commissioner
Docket Nos. 35832-85, 8213-86, 7840-87, 7848-87
United States Tax Court
T.C. Memo 1991-363; 1991 Tax Ct. Memo LEXIS 412; 62 T.C.M. (CCH) 340; T.C.M. (RIA) 91363; August 6, 1991, Filed *412 Decisions will be entered in accordance with respondent's computations. Brief amicus curiae was filed by Wayne S. Kaplan and Thomas C. Durham, on behalf of Cargill, Incorporated. William L. Bricker, Jr., Turner P. Smith, and William B. Sherman, for the petitioners. Anne Hintermeister and William H. Stoddard, III, for the respondent. COHEN, Judge. COHEN
MEMORANDUM OPINION In our prior opinion, Garnac Grain Co. v. Commissioner, 95 T.C. 7 (1990), we held that petitioners failed to meet the qualified export assets requirements of section 993(d) for the fiscal year ended January 31, 1975. We directed that decisions would be entered under Rule 155. (All section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.) Subsequent to our prior opinion and during the preparation of computations for entry of decisions, a dispute arose between the parties over the application of section 992(c). Under that section, a corporation that fails to satisfy the qualified export assets requirements applicable to a Domestic International *413 Sales Corporation (DISC) may avoid disqualification by making a "deficiency distribution" to its shareholder in an amount equal to its assets that are not qualified export assets. Such a deficiency distribution may be made if the failure to meet the qualified export assets test and the failure to make the distribution prior to the date on which it is made are due to reasonable cause. Section 1.992-3(c)(2), Income Tax Regs., states: (2) Determination of reasonable cause. In general, whether a corporation's failure to meet the 95 percent of gross receipts test, the 95 percent assets test, or both tests for a taxable year and its failure to make a pro rata distribution prior to the date on which it was made will be considered for reasonable cause where the action or inaction which resulted in such failure occurred in good faith, such as failure to meet the 95 percent assets test resulting from blocked currency or expropriation, or failure to meet either test because of reasonable uncertainty as to what constitutes a qualified export receipt or a qualified export asset. For further examples, if a corporation's reasonable determination of the percentage of its total gross receipts *414 that are qualified export receipts is subsequently redetermined to be less than 95 percent as a result of a price adjustment by the Internal Revenue Service under section 482, or if the corporation has a casualty loss for which it receives an unanticipated insurance recovery which causes its qualified export receipts to be less than 95 percent of its total gross receipts, then the failure to satisfy the 95 percent of gross receipts test is considered to be due to reasonable cause.
Petitioners contend that the DISC is entitled to make such a distribution because the failure to satisfy the requirements, as set forth in our prior opinion, occurred in good faith. Respondent disputes that characterization and, in any event, contends that it is premature for the Court to decide this issue prior to an actual deficiency distribution. Respondent relies on CWT Farms, Inc. v. Commissioner, 79 T.C. 1054 (1982), affd. 755 F.2d 790 (11th Cir. 1985), modified on another ground in Addison International, Inc. v. Commissioner, 90 T.C. 1207, 1217-1219 (1988), affd. 887 F.2d 660 (6th Cir. 1989). In CWT Farms, Inc., we *415 commented: Section 992(c) and its accompanying regulations provide no procedure for determining whether a deficiency distribution meets the requirements of such section and thus qualifies the distributing corporation as a DISC. Section 1.992-3(c)(3) of the regulations purports to allow a deficiency distribution to be made within 30 days after our decision concerning DISC status has become final. However, once the decision becomes final, we ordinarily have no jurisdiction to vacate, modify, or reconsider it. Anderson v. Commissioner, an unreported case (9th Cir. 1979, 693 F.2d 844, 43 A.F.T.R.2d (RIA) 728, 79-1 U.S. Tax Cas. (CCH) P9233), affg. an order of this Court; Lasky v. Commissioner, 235 F.2d 97 (9th Cir. 1956) (dismissing appeal from Tax Court), affd. per curiam 352 U.S. 1027 (1957). Thus, if International puts off making a deficiency distribution until after our decisions become final, this Court will be unable to recompute the petitioners' deficiencies based on International's claim that it qualified as a DISC by virtue of such deficiency distribution. To utilize the option which Congress clearly intended it to have under section *416 992(c), International must both make a distribution and litigate its validity before our decision become final. [Fn. ref. omitted.] Since International has expressed an intention to make a deficiency distribution, we are convinced that it is appropriate for us now to decide whether International's commissions receivable constituted qualified export assets for the taxable years in issue. We emphasize that we are not now deciding whether a distribution hereafter made by International will qualify as a deficiency distribution under section 992(c) sufficient to cause International to be treated as a DISC for its taxable years ending in 1975, 1976, and 1977. Such a determination must necessarily await International's attempt to comply with the requirements of section 992(c). At that time, we can decide whether the reasonable cause requirements of such provision have been satisfied. [79 T.C. at 1058-1059.]
At an earlier point in these proceedings, petitioners suggested that events subsequent to the years in issue might be deemed to constitute a distribution qualifying as a deficiency distribution under section 992(c). (The petitioner DISC, Export, was *417 liquidated as of January 18, 1985.) The Court, therefore, set an evidentiary hearing on the issue of good faith. Prior to the hearing, respondent conceded that there was "reasonable uncertainty concerning the meaning of the term 'production' for purposes of the DISC rules as applied to the grain elevator activities conducted by Garnac." Thus, good faith with respect to the first ground for disqualification discussed in our prior opinion has been established. The evidentiary hearing proceeded, however, with respect to the second ground discussed in our prior opinion, i.e., Garnac's failure to increase its investment in export-related assets by an amount equal to the amount of the producer's loans in issue. See Garnac Grain Co. v. Commissioner, 95 T.C. at 16-19 and 33-35. Evidence produced at that hearing supported petitioner's contention that Garnac had used the mark-to-market method in valuing inventory, that such method was in accord with generally accepted accounting principles, and that the company representatives had made a good faith attempt to comply with DISC requirements during the years in issue and had made a calculation in 1975 to establish that *418 the company met the increased investment test. Moreover, the calculations made on behalf of the company had been reviewed in 1977 by an Internal Revenue Service agent auditing the company, and satisfaction of this particular requirement was not specifically disputed by any representative of respondent until respondent's trial counsel raised the issue in a letter dated August 11, 1989, 1 month prior to the scheduled trial of this case and 15 years after the year of the loans. We are persuaded by petitioner's evidence and arguments that petitioner's representatives acted reasonably and that we have no basis for saying that they acted other than in good faith in the normal sense of the term. We also are persuaded that there was (and is) reasonable uncertainty as to whether "market adjustments on open trades" constituted property held for sale within the meaning of section 993(d)(2)(B). Respondent argues that "good faith" as used in the regulations is limited to those actions or inactions that occur as a result of circumstances beyond the taxpayer's control, such as those set forth in the four examples in the quoted regulation. Although the examples in the regulations may deal with *419 situations beyond the control of a taxpayer, neither the language of the regulation nor the reference to "reasonable uncertainty as to what constitutes * * * a qualified export asset" is limited to circumstances beyond a taxpayer's control. The propriety of our resolving this dispute at this time is undermined by petitioners' acknowledgment that no deficiency distribution had been made to date and that the decisions to be entered by us must be in the amount of the deficiencies calculated by respondent. It is particularly inappropriate here to make broad statements about reasonable cause in other contexts, as requested by amicus curiae. Certainly we cannot determine prior to the date of a distribution whether the failure to make it earlier is due to reasonable cause. The evidentiary hearing held subsequent to our opinion preserved evidence relevant to the issue and will provide us with an adequate record if a distribution is made promptly after the ultimate decisions in these cases are known but not final. Any ruling at this point, however, would be premature. For the foregoing reasons, Decisions will be entered in accordance with respondent's computations. Footnotes
1. Cases of the following petitioners are consolidated herewith: Garnac Grain Export Corporation, Dissolved, docket No. 8213-86; Garnac Grain Co., Inc., docket No. 7840-87; and Garnac Grain Co., Inc., as Transferee of Garnac Grain Export Corporation, Dissolved, docket No. 7848-87.↩