# United States Tax Court

T.C. Memo. 2024-73

OCONEE LANDING PROPERTY, LLC, OCONEE LANDING
INVESTORS, LLC, TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent[1]

————————

Docket No. 11814-19.                    Filed July 17, 2024.

————————

*Kip D. Nelson*, *Elizabeth K. Blickley*, *Vivian D. Hoard*, *Richard A. Coughlin*, and *Brian C. Bernhardt*, for petitioner.

*Shannon E. Craft*, *Hilary E. March*, *Laurie A. Humphreys*, *Scheherazade R. Ferrand*, *James G. Hartford*, and *Benjamin H. Weaver*, for respondent.

## SUPPLEMENTAL MEMORANDUM OPINION

LAUBER, *Judge*: In *Oconee Landing Property, LLC v. Commissioner* (*Oconee*), T.C. Memo. 2024-25, we disallowed a charitable contribution deduction for a conservation easement and sustained certain penalties. Among the penalties respondent determined was an accuracy-related penalty for a substantial understatement of income tax and (in the alternative) for negligence. *See* § 6662(a) and (b)(1) and (2).[2] This 20% penalty would apply to what we called the "lower tranche" of the

———————

[1] This Opinion supplements our previously filed opinion, *Oconee Landing Property, LLC v. Commissioner*, T.C. Memo. 2024-25.

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** underpayment, i.e., the portion of the underpayment that was not attributable to a valuation misstatement. *Oconee*, T.C. Memo. 2024-25, at \*75. In this case, the 20% penalty would apply to the portion of the underpayment resulting from our conclusion that Oconee, the partnership, was not entitled to a charitable contribution deduction of $4,972,002, corresponding to the correct value of the easement.[3] *Ibid.*

In our prior opinion we addressed the applicability of the 20% penalty for a substantial understatement, but we did not decide whether the penalty applied on the alternative ground of negligence. *See id.* at \*75–76. Referencing what is often called the "no-stacking rule," we stated: "Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is penalizable on more than one of the grounds set forth in section 6662(b)." *Id.* at \*75 n.34. Having decided the applicability of the substantial understatement penalty at the partnership level, we did not make an affirmative determination with respect to negligence.

Currently before the Court is respondent's Motion for Reconsideration of Opinion. In this Motion respondent seeks a ruling on the negligence penalty, contending that the no-stacking rule does not apply at the partnership level. After considering briefing from the parties, we find it appropriate to grant respondent's Motion and consider the negligence issue. We resolve this question in respondent's favor.

## Background

We adopt the findings of fact set forth in *Oconee*, T.C. Memo. 2024-25, repeating such facts only as necessary for clarity and convenience.

## Discussion

### I.    *Motion for Reconsideration*

As applicable here, reconsideration under Rule 161 serves the limited purpose of correcting substantial errors of law or fact. *Estate of Quick v. Commissioner*, 110 T.C. 440, 441 (1998), *supplementing* 110 T.C. 172 (1998); *accord* Fed. R. Civ. P. 60(b). Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or

---

[3] Before its repeal, the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 400–407, 96 Stat. 324, 648–71, governed the tax treatment and audit procedures for many partnerships, including Oconee.

**[*3]** tendering new legal theories to reach the end result desired by the moving party. *Estate of Quick*, 110 T.C. at 441–42. The decision of whether to grant a motion for reconsideration rests within the discretion of the Court and generally requires a showing of unusual circumstances or substantial error. *CWT Farms, Inc. v. Commissioner*, 79 T.C. 1054, 1057 (1982), *aff'd*, 755 F.2d 790 (11th Cir. 1985). The U.S. Court of Appeals for the Eleventh Circuit, to which this case is appealable absent stipulation to the contrary, has noted that the three primary grounds for granting a motion for reconsideration are (1) an intervening change in the controlling law, (2) the availability of new evidence, and (3) the need to correct clear error or prevent manifest injustice. *See Woide v. Fed. Nat'l Mortg. Ass'n*, 705 F. App'x 832, 836 (11th Cir. 2017) (citing *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383 (Fed. Cir. 2010)).

Respondent contends that "reconsideration is needed to prevent error or manifest injustice." Specifically, respondent argues that our application of the no-stacking rule at the partnership level was erroneous, and that our decision to forgo determining whether the negligence penalty should apply has "the unintended consequences of potentially absolving some partners . . . of responsibility for a section 6662 penalty on a portion of their underpayment." Respondent notes that the applicability of the substantial understatement penalty is based on a mathematical calculation, whereas the negligence penalty is not so conditioned.

Our decision to forgo determination of the negligence penalty was premised on our understanding that the no-stacking rule prohibited the application of multiple penalties with respect to a given portion of Oconee's underpayment. *See Oconee*, T.C. Memo. 2024-25, at *75 n.34. But Treasury Regulation § 1.6662-2(c) makes clear that the no-stacking rule relates to "the maximum accuracy-related penalty *imposed*." (Emphasis added.) This Court has jurisdiction to determine partnership items and the *applicability* of any penalty that relates to an adjustment to a partnership item. §§ 6221, 6226; *United States v. Woods*, 571 U.S. 31, 39–42 (2013). There is thus no limitation on our ability to determine *the applicability* of more than one accuracy-related penalty at the partnership level. *See, e.g.*, *Mill Road 36 Henry, LLC v. Commissioner*, T.C. Memo. 2023-129, at *70 (holding that the negligence penalty applied, in the alternative, "in the event that the understatement for any partner is small enough that, on his return, the understatement is not 'substantial'"); *Triumph Mixed Use Invs. III, LLC v. Commissioner*, T.C. Memo. 2018-65, 115 T.C.M. (CCH) 1329, 1340 (finding in a partnership-level

**[\*4]** TEFRA proceeding that both the negligence and the substantial understatement penalty applied).

We likewise agree with respondent that our failure to determine the applicability of the negligence penalty at the partnership level would preclude him from imposing that penalty (if appropriate) at the partner level.  Section 6221 provides that, in a TEFRA partnership case, the tax treatment of any partnership item (and the applicability of any penalty relating to the adjustment of any such item) shall be determined at the partnership level.  In *Woods*, 571 U.S. at 41, the Supreme Court explained that "the *applicability* of some penalties *must* be determined at the partnership level" (second emphasis added), with the determination as to whether such penalties should be *imposed* being determined "in partner-level proceedings after partner-level determinations" are subsequently made.

For the Internal Revenue Service to impose a penalty against an individual partner in a TEFRA context, the Court must first determine the applicability of that penalty in the partnership-level proceeding.  *See* Treas. Reg. § 301.6221-1(c).  "Once a partnership-level proceeding is final, the liability of the partners, if any, may be determined in a partner-level proceeding, which may involve a computational adjustment or a notice of deficiency."  *Dynamo Holdings Ltd. P'ship v. Commissioner*, 150 T.C. 224, 233 (2018) (citing § 6230(a)).  The results of the partnership-level proceeding are "conclusive" on the individual partners.  *Woods*, 571 U.S. at 41 (citing § 6230(c)(4)).

In short, we agree with respondent that our prior opinion made a "substantial error" on this point, and we agree that this error, unless corrected, could prejudice respondent in future partner-level proceedings.  We will thus grant his Motion for Reconsideration.[4]

---

[4] Petitioner incorrectly characterizes respondent's Motion as a request "to reverse [the Court's] ruling on the negligence penalty."  The Court in its prior opinion made *no ruling* on the negligence penalty; that is the error of which respondent complains.  Petitioner urges that reconsideration is inappropriate because respondent cites "no intervening change in law" and "no new evidence."  That is true, but those are not the only grounds for seeking reconsideration.  Another ground is to correct "substantial errors of law or fact," and that is the ground respondent urges.  Petitioner contends that respondent failed to produce partner-level evidence showing that individual partners would not be subject to the substantial understatement penalty.  This argument is silly: Respondent could not possibly know, in this TEFRA partnership proceeding, whether individual partners in future partner-level proceedings would have a

[*5] II.    *Negligence Penalty*

The Code provides for an accuracy-related penalty equal to 20% of an underpayment attributable to a taxpayer's negligence or disregard of rules or regulations.  § 6662(a) and (b)(1).  The existence of negligence is determined at the partnership level.  *See Oakbrook Land Holdings, LLC v. Commissioner*, T.C. Memo. 2020-54, 119 T.C.M. (CCH) 1351, 1360 (holding that the 20% penalty applies when a partnership takes a return position that is negligent); Treas. Reg. § 301.6221-1(c).  The Commissioner has no burden of production with respect to penalties in a TEFRA partnership action.  *Dynamo*, 150 T.C. at 236.  Thus, the burden of showing that the negligence penalty does not apply—including the availability of any defenses—is on petitioner.  *See id.* at 236–37.

In our prior opinion we held that Oconee, for two reasons, was entitled to a charitable contribution deduction of zero.  First, because the property on which the easement was granted (Subject Property) was "ordinary income property" in Oconee's hands, it was entitled to no deduction because it failed to prove its basis in the property.  *See* § 170(e)(1)(A); *Oconee*, T.C. Memo. 2024-25, at *45–47.  Second, we held that Oconee had failed to secure a "qualified appraisal" because its managers "had knowledge of facts that would cause a reasonable person to expect the appraiser falsely to overstate the value of the donated property."  *Oconee*, T.C. Memo. 2024-25, at *36–43 (quoting Treas. Reg. § 1.170A-13(c)(5)(ii)).

We find that Oconee was negligent with respect to both issues.  Oconee's managers, the Reynoldses, were real estate developers charged with knowledge that the land they contributed to Oconee was "inventory property" in their hands.  The reason that Oconee was entitled to a deduction of zero is that it failed to substantiate its basis in the Subject Property.  "Negligence includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Treas. Reg. § 1.6662-3(b)(1).  Oconee's failure to maintain and supply adequate records to substantiate its adjusted basis in the Subject Property is prima facia evidence of negligence.  *See id.*  We concluded in our prior opinion

---

"substantial understatement" of tax, which will obviously depend on their individual tax circumstances.  Respondent is simply arguing that the error in our prior opinion creates *a risk* of prejudice to him in future partner-level proceedings, and that is sufficient to justify his Motion.

**[\*6]** that Oconee did not establish "reasonable cause" for this failure. *See Oconee*, T.C. Memo. 2024-25, at *76.[5]

We likewise find that Oconee acted negligently in connection with its failure to secure a "qualified appraisal." That determination flowed from our finding that the Reynoldses, the ultimate managers of Oconee and petitioner, "had knowledge of facts that would cause a reasonable person to expect the appraiser falsely to overstate the value of the donated property." *Ibid.* (quoting Treas. Reg. § 1.170A-13(c)(5)(ii)). In making this determination, we found that the Reynoldses, acting through their intermediaries, had reached a "meeting of the minds" with their appraiser that the Parent Tract would be appraised at a predetermined inflated value necessary to achieve their desired "easement value." *See id.* at *43. Securing and relying upon an appraised value that one knows to be inflated is necessarily "negligent."

We held in our prior opinion that Oconee lacked reasonable cause for its failure to secure a "qualified appraisal." *Id.* at *45–46. Reasonable cause requires taxpayers to "have exercised ordinary business care and prudence." *Crimi v. Commissioner*, T.C. Memo. 2013-51, 105 T.C.M. (CCH) 1330, 1353 (citing *United States v. Boyle*, 469 U.S. 241 (1985)). Oconee based its "reasonable cause" defense on alleged reliance on professional advice. But as we concluded in our prior opinion, "[a] person who achieves an advance agreement with an appraiser that property will be overvalued—knowing that it is being overvalued—cannot establish good faith reliance on professional advice that the appraisal is acceptable." *Oconee*, T.C. Memo. 2024-25, at *46–47.

---

[5] In concluding that the land within the Subject Property was "ordinary income property," we found (among other relevant facts) that Jamie Reynolds and Reynolds Partners, L.P., an entity controlled by Mercer Reynolds, had reported the profits from prior sales of portions of the Parent Tract, between February and June 2014, as ordinary income on their Federal income tax returns. *See Oconee*, T.C. Memo. 2024-25, at *50, *52, *76. This fact was stipulated as to Jamie Reynolds's 2014 return. Although there was no stipulation as to Reynolds Partners' 2014 return, we inferred that its return had likewise reported the sales as generating ordinary income and not capital gain. *See id.* at *50, *76. First, Jamie Reynolds and Reynolds Partners were 50/50 partners, and we found it logical to assume that they had reported the same transactions the same way. Second, if Reynolds Partners had reported the transactions as generating capital gain, it would have been in petitioner's interest to offer that 2014 return into evidence. The fact that petitioner did not do so gives rise to an inference that Reynolds Partners' return would not have supported petitioner's position that the Parent Tract (including the Subject Property) was not "ordinary income property."

**[*7]**    In sum, the facts establish that the accuracy-related penalty for a substantial understatement of income tax, *see* § 6662(a), (b)(2), and the negligence penalty, *see* § 6662(a) and (b)(1), both apply (in the alternative) to the "lower tranche" of Oconee's underpayment.  We note that these conclusions do not preclude a partner's ability to raise penalty defenses during a subsequent partner-level proceeding.  *See Dynamo*, 150 T.C. at 233 (citing § 6230(a)).

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them unnecessary to reach, without merit, or irrelevant.

To reflect the foregoing,

*An appropriate order will be issued granting respondent's Motion for Reconsideration of Opinion, and decision will be entered under Rule 155.*