ESTATE OF ROBERT BLOCH, DECEASED, PHILIP WILTCHIK, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4729–63. Filed September 28, 1965.

*Archibald A. Patterson*, for the petitioner.
*Rudolph J. Korbel*, for the respondent.

FAY, *Judge:* This proceeding involves a redetermination of deficiencies in withholding taxes asserted against the decedent, Robert Bloch, and additions to taxes under the provisions of sections 291(a) and 293(a) of the Internal Revenue Code of 1939 and sections 6651(a) and 6653(a) of the Internal Revenue Code of 1954 in the following amounts for the taxable years 1952 through 1959:

| Taxable year | Deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 291(a), 1939 Code, sec. 6651(a), 1954 Code | Sec. 293(a), 1939 Code, sec. 6653(a), 1954 Code |
| 1952 | $7,008.60 | $1,752.15 | $350.43 |
| 1953 | 29,213.45 | 7,303.36 | 1,460.67 |
| 1954 | 85,154.54 | 21,288.64 | 4,257.73 |
| 1955 | 59,295.03 | 14,823.76 | 2,964.75 |
| 1956 | 31,615.44 | 7,903.86 | 1,580.77 |
| 1957 | 20,400.14 | 5,100.04 | 1,020.01 |
| 1958 | 4,850.15 | 1,212.54 | 242.51 |
| 1959 | 9,173.49 | 2,293.37 | 458.67 |

The issues before us are (1) whether the decedent, Robert Bloch, who purchased discounted dividend coupons detached from bearer stock certificates of a domestic corporation, is liable as a withholding agent for the 30-percent withholding tax under the provisions of sections 143(b) and 1441 of the Internal Revenue Codes of 1939 and 1954, respectively; and (2) whether the decedent, Robert Bloch, is liable for additions to tax under the provisions of sections 291(a) and 293(a) of the Internal Revenue Code of 1939 and sections 6651(a) and 6653(a) of the Internal Revenue Code of 1954.

#### FINDINGS OF FACT

Some of the facts were stipulated and the stipulated facts and exhibits incorporated therein are found accordingly.

The decedent, Robert Bloch, was an individual citizen of the United States and a resident of New York, N.Y., at all times hereinafter mentioned up to and including the date of his death.

Petitioner Philip Wiltchik is the duly qualified executor of the will of said decedent, Bloch, pursuant to letters testamentary granted to petitioner by the Surrogate's Court of the County of New York, State of New York, on August 6, 1959. His authority to act as executor has not been revoked and is still in full force and effect.

Franco Wyoming Oil Co. (hereinafter referred to as Oil Co.) is a Delaware corporation formed in 1909 by a group of French and Belgian investors for the purpose of engaging in the production and sale of oil in the United States.

Oil Co. (directly or through three wholly owned domestic subsidiaries and a wholly owned French subsidiary) is presently engaged in the business of producing and selling oil and gas, and in certain ranching operations; in addition it derives income from oil and gas royalty interests, domestic and foreign investments, and tanker operations. The business has been successful, and Oil Co. has paid dividends regularly.

Following the original formation of Oil Co., practically all of its stock was held by a trust, which trust was owned and controlled by a group of French and Belgian investors and was known as the Franco-Belgo Trust.

In due course, it was decided to introduce the trading of Oil Co. shares on the Paris Bourse. However, this could not be done under the rules of the Bourse so long as the shares remained in registered form. Accordingly, another trust, the Trust Français des Actions de la Franco Wyoming Oil Co. (hereinafter referred to as the Trust Français) was formed to hold Oil Co.'s shares in its name and to issue against such shares bearer certificates which would be freely traded on the Paris Bourse.

The Trust Français received the dividends on the stock of Oil Co. held by it and disbursed the same to the holders of bearer certificates upon surrender by the holders of dividend coupons attached to the bearer certificates. Due to a change in French law in 1929, it ceased to be practicable to use the Trust Français for the aforementioned purpose.

On February 28, 1930, there was organized, under the laws of Delaware, the Franco Wyoming Securities Corp. (hereinafter referred to as Securities Corp.). The purpose of Securities Corp. was to replace the Trust Français in function. On March 25, 1930, shortly after the organization of Securities Corp., it entered into a contract with Oil Co. pursuant to which Securities Corp. would hold, registered in its name, shares of Oil Co. against which Securities Corp. would issue

bearer certificates (with dividend coupons attached) which could be traded in on the Paris Bourse. Securities Corp. was also to receive and distribute Oil Co. dividends in substantially the same manner as the Trust Français.

The aforesaid agreement of March 25, 1930, was put into effect, and bearer certificates of Securities Corp. were duly exchanged for the outstanding bearer certificates of the Trust Français. Such bearer certificates of Securities Corp. were then admitted to trading on the Paris Bourse and have been so admitted and traded ever since.

It has been the consistent practice of Oil Co. to declare and pay a single dividend each year. This is generally declared during the first half of December, payable to stockholders of record on a date during such first half of December, and payable on a date in the latter half of December.

On the payment date, Oil Co. pays the dividends to its stockholders of record.

Upon declaration of a dividend by Oil Co., appropriate notices are inserted in United States and French financial publications. The notices published in France inform French holders of bearer certificates that they may obtain their dividends from the Banque Nationale de Commerce et l'Industrie (hereinafter referred to as BNCI) in Paris. In practice, BNCI not only redeems dividend coupons, but also does so through other French banks as its agents.

Upon receipt of a dividend payment from Oil Co., Securities Corp. deposits the same to its account with the First National City Bank of New York. Said First National City Bank, by virtue of its designation by Securities Corp. as its paying agent in the United States, has continuing authority to pay coupons presented directly to it.

Decedent's *modus operandi* was as follows: During November of the years under review he bought, mainly from foreign banks, at a discount of approximately 5 percent, coupons detached from Securities Corp. certificates. The foreign banks had bought the detached coupons from Securities Corp. certificate-holders or from intermediaries who had done so. The certificate-holders are unknown. When decedent purchased the coupons he would transmit payment therefor to the foreign banks. Decedent then, through an official of the Mercantile National Bank, Miami Beach, Fla., the brokerage house of H. Hentz & Co., 60 Beaver Street, New York City, and otherwise, presented the coupons for payment. Apparently decedent, through one of the foregoing parties, surrendered the coupons to and was paid by Delaware Trust Co., Wilmington, Del.; First National City Bank of New York; and sometimes Securities Corp. itself. None of these organizations withheld tax on payments to the decedent.

In connection with such payments, decedent, through an official of the Mercantile National Bank and H. Hentz & Co., delivered Treasury Department Forms 1000 [1] with each lot of coupons so surrendered.

Decedent received the full amounts of the respective dividends represented by said coupons without reduction for withholding tax.

During the years in question, bid and ask quotations were readily available upon inquiry at the foreign banks handling such sales on the coupons attached to Securities Corp. certificates.

A translation from French to English of the writing contained on the face of the coupons is as follows:

After payment of dividend by the Franco Wyoming Oil Company the Franco Wyoming Securities Corporation will pay upon presentation of this coupon and according to notice published by it, the dividend appertaining to the 10 shares of common stock represented by this certificate.

Decedent, during the years in issue, did not withhold and pay over to the United States 30 percent of amounts received upon cashing in the coupons in question.

Respondent asserted deficiencies in withholding taxes against said decedent for the taxable years 1952 through 1959 in the aggregate amount of $246,710.84, and additions to tax under the provisions of sections 291(a) and 293(a) of the 1939 Code and sections 6651(a) and 6653(a) of the 1954 Code in the aggregate amount of $74,013.26.

OPINION

The major issue to be decided is whether decedent, Bloch, was under any duty to withhold tax on certain dividend coupons pursuant to the provisions of section 143 (b) and (c) and sections 1441 and 1461 of the Internal Revenue Codes of 1939 and 1954, respectively.[2]

The facts on this issue are not in dispute and may be summarized as follows: Oil Co. is a Delaware corporation formed in 1909 by a group of French and Belgian investors. Securities Corp. is also a Delaware corporation formed in 1930. Under an agreement dated March 25, 1930, Securities Corp. holds, registered in its own name, the major portion of the certificates of stock of Oil Co. (surrendered to it by those holders of Oil Co. stock) against which Securities Corp. issued

---

[1] On Form 1000 decedent mistakenly represented himself to be the owner of the underlying stock certificates. Form 1000 was not appropriate for the type of securities involved herein. The relevant portion thereof states as follows:

> To Be Used by a Citizen or Resident Individual, Fiduciary, or Partnership in Connection With Interest on Bonds of a Domestic or Resident Corporation Containing a Tax-Free Covenant and Issued Before January 1, 1934.

[2] Hereinafter for the purpose of this opinion, when reference is made to secs. 1441 and 1461, I.R.C. 1954, it will be deemed to refer also to sec. 143 (b) and (c), I.R.C. 1939. The sections of the 1939 Code referred to above are substantially similar to their 1954 Code counterparts, therefore, a separate discussion of the applicable sections of both Codes may be dispensed with. The taxable years herein involved fall within the provisions of both the 1939 Code and the 1954 Code.

bearer certificates with dividend coupons attached, evidencing ownership of the stock of Oil Co. The purpose of this arrangement was to facilitate the trading on the Paris Bourse, which requires bearer certificates. Decedent, during the years 1952 through 1959, purchased at a discount a substantial number of the foregoing dividend coupons mainly from foreign banks and presented them to the paying agent in the United States (Securities Corp.) for redemption, along with a certificate of ownership (U.S. Treasury Form 1000).

In order to insure collection of tax, withholding is required by the person paying the income, rather than the one receiving it, in general and in the case of payments to nonresident aliens of fixed or determinable annual or periodical income from sources within the United States. Sec. 1441.[3]

It is respondent's position that the bearer coupons represent the right to earned dividend income to the owner of the underlying stock certificates on the record date; and since, he argues, decedent had control, receipt, and custody of the payment, decedent is liable as a withholding agent under section 1441.[4]

Petitioner contends that the dividend coupons in issue are bearer coupons, title to which passed to decedent upon purchase and delivery; and, inasmuch as decedent was the owner of the coupons, he was not obligated to withhold tax upon payment made to him of the dividends.

Initially, we note that respondent does not suggest nor does the record indicate any collusion between decedent and the underlying certificate-holders (or any other party) so as to support the respondent's imposition of an agency relationship upon decedent. Decedent merely purchased the coupons from foreign banks which had purchased the coupons from stock certificate holders or intermediaries which had previously done so. The certificate-holders were at all times unknown to decedent. Therefore there is no basis for designating decedent an agent of the certificate-holders in the usual sense.

Section 1441 requires that a person have some control of an income item of a nonresident alien before the withholding provisions take effect. In this case, decedent clearly never had control of any nonresident alien's income from U.S. sources. Decedent simply purchased

---

[3] SEC. 1441. WITHHOLDING OF TAX ON NONRESIDENT ALIENS.

(a) GENERAL RULE.—Except as otherwise provided in subsection (c), all persons, in whatever capacity acting (including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States) having the control, receipt, custody, disposal, or payment of any of the items of income specified in subsection (b) (to the extent that any of such items constitutes gross income from sources within the United States), of any nonresident alien individual, or of any partnership not engaged in trade or business within the United States and composed in whole or in part of nonresident aliens, shall (except in the cases provided for in section 1451 and except as otherwise provided in regulations prescribed by the Secretary or his delegate under section 874) deduct and withhold from such items a tax equal to 30 percent thereof.

[4] Respondent's contention is premised upon the assumption that all or part of the certificate-holders are nonresident aliens. Petitioner has not shown otherwise.

detached coupons from foreign banks which had at an earlier date purchased said coupons from unknown security-holders or other intermediaries. The coupons became the property of decedent upon delivery to him.

Had the certificate-holders failed to negotiate their coupons, they would undoubtedly have been entitled to redemption thereof. However, once decedent purchased said coupons, no other party had the right of redemption.[5] When decedent turned in his coupons to Securities Corp., he was collecting his own income and not the income of a third party.[6] Since decedent was dealing in his own property, he was not in any capacity dealing in income items "of any nonresident alien." In short, decedent purchased the coupons in issue as a principal and not as an agent.

Although we agree with respondent that the sale of the dividend coupons by nonresident aliens prior to collection thwarts the intent of section 1441, we cannot attribute an agency to decedent, thereby making him an unwitting insurer of U.S. revenues, merely because he purchased such coupons. Moreover, in the absence of collusion and in view of decedent's ownership of the coupons in issue, we cannot see how decedent's representations to Securities Corp. on Form 1000 affect petitioner's legal position herein. Accordingly, we hold for petitioner on this issue.

In view of the foregoing, there is no basis for respondent's assertion that decedent was liable for additions to tax (1) for failing to file withholding returns by reason of willful neglect and (2) for failure to pay the tax due by reason of negligence or intentional disregard of rules and regulations.

*Decision will be entered for the petitioner.*

---

[5] The terms of the coupons themselves require payment to the coupon-holder and not to the underlying certificate-holder.

[6] Since the security-holders had previously sold their coupons to banks or other parties, they had no dividend rights against Securities Corp. immediately prior to the time decedent purchased the coupons.