CASA DE LA JOLLA PARK, INC., A CALIFORNIA CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28972-87.     Filed March 13, 1990.

*Chris John Wenthur,* for the petitioner.
*Sylvia L. Shaughnessy,* for the respondent.

WRIGHT, *Judge:* By notice of deficiency dated June 1, 1987, respondent determined deficiencies in petitioner's withholding of Federal income tax at source for taxable

years ending December 31, 1982, and December 31, 1983, of $48,981 and $79,236, respectively.

The issues for decision are: (1) Whether petitioner was responsible under section 1441(a)[1] for withholding tax on interest income of its nonresident alien sole shareholder, and if so, (2) whether petitioner is excepted from liability under section 1441(c)(1) for not withholding the tax because the interest income item at issue was effectively connected with the conduct of a trade or business within the United States.

## FINDINGS OF FACT

Some of the facts of this case have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Casa de La Jolla Park, Inc. (hereinafter referred to as petitioner), was incorporated under the laws of the State of California. Petitioner's principal place of business was in La Jolla, California, when it filed its petition in this case.

In early 1981, Donald J. Blake Marshall (Marshall), a Canadian citizen and nonresident of the United States, was approached by the principals of Versatyme Controls Corp. (Versatyme), a California corporation, who were seeking "bridge financing" for a property Versatyme intended to acquire and market on a time-share plan. Marshall, an engineer by training, was the president of Blake Resources Ltd. (Blake Resources), a Canadian public company that was involved in oil and gas exploration. Marshall was interested in investing in the United States because of what he perceived as a declining political climate in Canada for wealthy persons. Marshall had already made several investments in the United States—as a limited partner in a small California real estate development and in a California farming operation, and had participated in the development of a Colorado shopping center.

Versatyme was interested in acquiring a 16-unit motel located in La Jolla, California (the La Jolla property). Marshall negotiated with Versatyme until April 1981, when

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

he agreed to participate in the project. During that time, Marshall was somewhat involved in the development of marketing strategies for the time-share project, as well as negotiations with the project manager. Rather than advancing Versatyme the funds, however, Marshall decided to purchase the property himself and give Versatyme the option to buy the property from him. In order to shield himself individually from potential liability arising from the project, Marshall decided to hold the La Jolla property through a corporate entity. Accordingly, Marshall incorporated DJBM of California (DJBM), a California corporation, on April 10, 1981. Marshall initially capitalized DJBM with $10,000. The business purpose of DJBM was to acquire the La Jolla property and convert it into 15 condominiums to be sold as 750 time-share units (15 units for 50 1-week periods).

On April 10, 1981, Marshall, in his individual capacity, borrowed $1 million from the Royal Bank of Canada (Royal Bank). The loan was to be repaid over a 5-year term. In a letter to Marshall dated April 10, 1981, the Royal Bank required a guarantee of the loan by Marshall's Canadian company, Battle Bend Holdings Ltd., as well as the hypothecation of 828,000 shares of Marshall's stock in Blake Resources. During 1981 and early 1982, Blake Resources stock was trading on the Toronto Stock Exchange at approximately $8 per share. The Royal Bank also required Marshall to assign all his shares of DJBM stock as security for the loan, as well as all his rights and interests in all of the time-share promissory notes from third parties as such notes were executed.

Marshall acquired 100 shares of DJBM on April 14, 1981, with the $1 million loan proceeds from the Royal Bank. Also on April 14, 1981, DJBM acquired the La Jolla property for $1 million. DJBM acquired the property by Versatyme's assignment of its existing escrow rights in the property. Prior to its assignment to DJBM, and through arrangements with the seller of the property, Versatyme made certain improvements to the property. On April 14, 1981, DJBM was assigned as the insured on the policy covering the La Jolla property.

Simultaneously with DJBM's April 14, 1981, acquisition of the La Jolla property, Marshall granted Versatyme an exclusive option to acquire all of his DJBM stock. Under the option agreement, Marshall granted Versatyme the right to acquire all the stock for $1,200,000 in notes secured by deeds of trust and one-third of the "net venture profits" as defined in the option agreement. Versatyme had until June 16, 1981, to exercise the option. Thereafter, Versatyme received an extension of time to exercise its option. Between April 1981 and November 1981, Marshall advanced approximately $600,000 more to DJBM for the time-share project. Marshall also borrowed these funds from the Royal Bank.

On November 17, 1981, Versatyme exercised its option to purchase Marshall's DJBM stock and gave Marshall a promissory note for $1,200,000 payable in 60 monthly installments at an annual 15-percent interest rate, plus a percentage of profits upon the sale of the time-share units. At that time, Silverado Investments, Inc., which owned all of the stock in Versatyme, guaranteed Versatyme's obligation to Marshall and as collateral granted him a security interest in all of the issued and outstanding shares of Versatyme. Versatyme also granted Marshall a deed of trust in the La Jolla property for the purpose of securing Versatyme's promissory note to Marshall.

The sale and purchase agreement covering Versatyme's exercise of its option detailed specific provisions relating to the collection and disbursement of all cash, time-share promissory notes, time-share promissory note proceeds, and time-share trust deeds relating to the La Jolla property. By an agreement dated November 23, 1981, amending the sale and purchase agreement, the Bank of California (BankCal) was named as the collection agent for the collection and disbursement of the proceeds from the time-share notes and trust deeds. The sales and purchase agreement called for BankCal to make the following distributions of its collected proceeds:

1. to Marshall for the principal and interest due on the $1,200,000.00 promissory note from Versatyme;
2. to Versatyme for maintaining the operating reserves as provided in the budget;
3. to Versatyme, but only upon the written consent of Marshall; and

4. to Versatyme and Marshall pursuant to the terms of the earnout agreement.

Between November 30, 1981, and January 1, 1982, Versatyme closed sales on 154 timeshare units, resulting in 143 timeshare notes receivable and 11 cash sales. The 143 timeshare notes, endorsed to Marshall as security for Versatyme's promissory note, were then endorsed in favor of BankCal under the terms of the collection and disbursement provisions.

In January 1982, Versatyme was unable to meet its obligation to Marshall on the promissory note. In anticipation of Versatyme's default, Marshall formed another California corporation, petitioner herein, to continue marketing the timeshare units. On January 14, 1982, Marshall purchased all of the issued stock of petitioner (100 shares) for $10,000. Marshall was petitioner's sole shareholder and director. Petitioner acquired all of Marshall's interests and rights to the La Jolla property in exchange for a promissory note (shareholder loan) from petitioner to Marshall in the amount of $1,627,335 with interest at 28 percent per annum. The amount of the shareholder loan was based upon Marshall's total expenditures for the La Jolla property as of that time—$1 million for the purchase of DJBM stock and his additional advances to DJBM. By a reconveyance agreement dated January 15, 1982, petitioner also acquired all of Versatyme's rights to the La Jolla property in return for a release of Versatyme's obligations to Marshall.

By letter dated January 21, 1982, Versatyme's attorney advised BankCal of the transfer of rights in the La Jolla property by Versatyme to petitioner. Petitioner requested BankCal to continue its collection functions relating to the La Jolla property. BankCal thereafter remitted to petitioner payments collected on the time-share notes until August 1982. Petitioner continued to market the remaining time-share units until all the units were eventually sold.

In April 1982, Marshall, in his individual capacity, obtained an additional $500,000 line of credit from the Royal Bank to be used for the La Jolla property. As collateral for its outstanding loans to him, the Royal Bank required Marshall to give it a security interest in his

property, including hypothecation of Marshall's 100 shares in petitioner.

In mid-1982, Blake Resources Ltd. went into the Canadian equivalent of a bankruptcy reorganization (chapter 11) proceeding. Thereafter, the Royal Bank, which held 828,000 shares of Blake Resources Ltd. stock as collateral security on its $1 million loan to Marshall, sought further assurances of collection on Marshall's debts.

On July 15, 1982, petitioner, by Marshall as director, authorized BankCal to remit to the Royal Bank on a monthly basis the net proceeds of the timeshare notes, otherwise due and payable to petitioner. The authorization stated that BankCal might be directed by the Royal Bank, from time to time, to transfer funds to petitioner's operating account. Marshall, as sole shareholder and director of petitioner, also caused petitioner to assign to the Royal Bank all the timeshare unit promissory notes and/or mortgages relating to the La Jolla property. The Royal Bank further requested BankCal to hold the notes and/or mortgages in trust for the Royal Bank and to continue its monthly collection duties. The Royal Bank also advised BankCal that the monthly proceeds of the notes and/or mortgages could be accumulated in the account until the Royal Bank requested them.

Upon petitioner's request, the Royal Bank authorized BankCal to release the entire February and March 1983 note proceeds to petitioner for its operating expenses. All funds remitted by BankCal to the Royal Bank during 1982 and 1983 were immediately applied to Marshall's personal loan accounts.

In May 1983, Marshall, on petitioner's behalf, executed additional documents assigning petitioner's interest in amounts due from specific debtors and guaranteeing payment of Marshall's personal loans to the Royal Bank.

Petitioner filed U.S. Annual Returns of Income to be Paid at Source (Forms 1042) for taxable years ended December 31, 1982, and December 31, 1983, on which it reported gross amounts paid of $326,538 and $528,242 for 1982 and 1983, respectively. The Forms 1042 also reflected that no tax had been withheld on the reported payments, nor were there any deposits of tax.

On its 1982 corporate tax return (Form 1120), petitioner, an accrual method taxpayer, deducted interest in the amount of $483,186. The supporting accounting records reflect that the reported amount consisted of $326,538.24 of interest paid and a balance of $171,647.91 in accrued interest. On its 1983 corporate tax return, petitioner deducted interest in the amount of $303,110. The supporting accounting records reflect that $528,241.53 of interest was paid as of the end of 1983, comprised of the $171,647.91 balance of accrued interest for 1982, the $53,483.51 payment for December 1982, that was made in January 1983, and the $303,110.11 in interest accrued for 1983. Petitioner's supporting accounting records also indicate that, in addition to interest payments, petitioner made payments in 1983 toward the principal amount of the shareholder note.

Sometime in 1983, Marshall filed with petitioner an Exemption from Withholding of Tax on Income Effectively Connected with the Conduct of a Trade or Business in the United States (Form 4224) for calendar year 1982. On the Form 4224, Marshall listed his U.S. business as "sales of time-share condominiums in La Jolla, CA" and stated that the income connected with such business was the "interest income from loans used to purchase condominium project." There is no evidence that Marshall filed a Form 4224 for calendar year 1983 with petitioner.

In August 1983, and October 1984, Marshall filed U.S. Nonresident Alien Income Tax Returns (Forms 1040NR) for 1982 and 1983, respectively. On the Forms 1040NR, Marshall listed his occupation as "developer/investor" and reported the following income (loss) from his business:

|  | 1982 | 1983 |
|---|---|---|
| Interest income | $258,054 | $528,242 |
| Interest expense | 346,922 | 255,983 |
| Net profit (loss) | (88,868) | 272,259 |

Marshall also reported a partnership loss from his Colorado partnership interest and a net operating loss carryforward from his limited partnership interests. Marshall paid no U.S. taxes for either 1982 or 1983.

During the years at issue, Marshall owned an insignificant amount, if any, of stock in any U.S. corporation other than DJBM or petitioner. Nor did Marshall make any loans

to any U.S. corporation other than DJBM or petitioner. Furthermore, Marshall was in the United States no more than 12 days per year during 1982 and 1983, including time spent for interconnecting flights. During 1982, Marshall devoted the vast majority of his time and energy to Blake Resources and his other Canadian companies.

## OPINION

Section 1441(a) generally places a duty on all persons having the control, receipt, custody, disposal, or payment of certain income items of nonresident aliens to withhold tax on such income items. The applicable income items, to the extent they constitute gross income from sources within the United States, include interest. Sec. 1441(a) and 1441(b). The required rate of withholding on interest is 30 percent, unless reduced by treaty. Sec. 1441(a); sec. 1.1441-1, Income Tax Regs. Under the treaty in effect for the years at issue, the applicable withholding rate on interest income of Canadian citizens is 15 percent. Convention and Protocol between the United States of America and Canada, March 4, 1942, art. X, sec. 1, 56 Stat. 1399, 1402, as amended. Section 1461 imposes liability on every person required to deduct and withhold the tax required under section 1441(a).

Section 1441(c) provides certain exceptions from the withholding requirements of section 1441(a). One exception is for an item of income which is effectively connected with the conduct of a trade or business within the United States and which is included in the gross income of the recipient under section 871(b)(2) for the taxable year. Sec. 1441(c)(1).

The rationale underlying the withholding provisions at issue is as follows:

In order to insure collection of tax, withholding is required by the person paying the income, rather than the one receiving it, in general and in the case of payments to nonresident aliens of fixed or determinable annual or periodical income from sources within the United States. [*Estate of Bloch v. Commissioner*, 44 T.C. 815, 819 (1965); citation and fn. ref. omitted.]

Petitioner contends that it is not liable for withholding taxes because it is not a withholding agent under section 1441(a). Moreover, petitioner argues, it is excepted from

withholding responsibility under section 1441(c) because the interest item at issue was effectively connected with Marshall's U.S. trade or business.

Respondent's determinations are presumed correct. Accordingly, petitioner bears the burden of proof. *Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a).

### Whether Petitioner had a Withholding Duty under Section 1441(a)

In contesting its liability as a withholding agent under sections 1441 and 1461, petitioner contends that it never possessed or controlled Marshall's interest income. Therefore it was impossible, petitioner argues, to withhold tax from something it did not possess or control. Moreover, petitioner asserts that withholding income at the source was impossible because Marshall never actually received any income from which petitioner could withhold.

Respondent, on the other hand, contends that Marshall constructively received the interest income because pursuant to petitioner's directions the monthly net proceeds otherwise payable to it were applied to Marshall's outstanding loans with the Royal Bank. In addition, respondent contends that petitioner did control the proceeds of the timeshare notes from which withholdings could have been made.

With respect to its first argument, petitioner contends that there never were payments from petitioner to Marshall from which withholdings could have been made. Petitioner reasons that it never actually "paid" Marshall the interest income. Rather, petitioner merely accrued in its records the interest owed Marshall in accordance with its accrual method of accounting. Furthermore, Marshall, a cash-basis taxpayer, never actually received any income. Therefore, argues petitioner, the transactions at issue are simply the result of accounting entries rather than any actual payment of interest.

We reject petitioner's assertion that withholding responsibility under section 1441(a) requires actual payment and receipt. Petitioner's contention contradicts the language of section 1441(a) which contemplates imposing responsibility on a broad spectrum of persons: "all persons, in whatever

capacity acting * * * having the control, receipt, custody, disposal, *or* payment." Sec. 1441(a) (emphasis supplied). Moreover, even though Marshall did not actually receive the interest income, under the doctrine of constructive receipt, which we find is applicable here, he constructively received the income when the Royal Bank applied it to reduce his outstanding loan balances. See *Sowell v. Commissioner,* 302 F.2d 177, 180 (5th Cir. 1962), revg. a Memorandum Opinion of this Court. Therefore, for purposes of section 1441(a), Marshall did receive the interest income.

Petitioner next argues that it did not possess the required custody or control of Marshall's interest income because it was not the payor. Petitioner cites *Tonopah & T. R. Co. v. Commissioner,* 112 F.2d 970 (9th Cir. 1940), revg. 39 B.T.A. 1043 (1939), in support of its position. In *Tonopah,* the taxpayer (Tonopah) was a New Jersey corporation that was owned by a British corporation (Borax). Tonopah issued bonds that were guaranteed by Borax. Some of the bond-holders were nonresident aliens. Because of substantial losses it had suffered, Tonopah was unable to meet its interest obligations on the bonds and Borax paid the interest out of funds on deposit in England. In reversing the Board of Tax Appeals, the Court of Appeals for the Ninth Circuit held that Tonopah was not liable for withhold-ing on the interest payments to nonresident aliens because Tonopah "never possessed the interest moneys from which [it] could withhold anything within the contemplation of the statute." 112 F.2d at 972.

Petitioner argues that it could no more control the Royal Bank than Tonopah could control Borax. Without the required control or custody, argues petitioner, it could not withhold the tax from the amounts paid.

We are not persuaded, however, that *Tonopah & T. R. Co. v. Commissioner, supra,* supports petitioner's position. In *Tonopah* Borax, a British corporation, as guarantor and using its own funds, paid the interest directly to the nonresident alien bondholders of Tonopah, a New Jersey corporation. Accordingly, the court held that Tonopah never possessed the interest moneys from which it could withhold anything. Of equal importance was the court's rejection of the Commissioner's claim that Borax first loaned the funds

to Tonopah and then paid the funds to the bondholders, as Tonopah's agent. The Court of Appeals rejected this claim because it was first raised before them and was contrary to the ultimate facts contended by the Commissioner before the Board of Tax Appeals.

The instant case is distinguishable from *Tonopah & T. R. Co. v. Commissioner, supra.* The payments at issue were not made by a third party guarantor out of its own funds and after the default of the primary obligor. Rather, petitioner directed BankCal to remit the net proceeds of the time-share notes, otherwise due and payable to petitioner, to the Royal Bank, which applied the remitted funds to Marshall's outstanding personal loans. In addition, the funds used were petitioner's. Indeed, the facts of the instant case are more like the claim rejected by the Court of Appeals in *Tonopah.* Therefore, the holding in *Tonopah* of a lack of control is not applicable in the instant case.

Moreover, we reject petitioner's contention that it lacked control over the funds at issue because Marshall, as petitioner's director, really had no choice in directing BankCal to remit the timeshare note proceeds to the Royal Bank. We first note that petitioner in this case is Marshall's corporation, an entity completely separate from him. Marshall's financial problems are not imputable to his corporation. Furthermore, the funds were petitioner's and its decision to remit them directly to the Royal Bank necessarily manifests that petitioner possessed the requisite control.

We also dismiss petitioner's argument that it did not possess the requisite control because it lacked access to the funds remitted from BankCal to the Royal Bank. The facts simply contradict petitioner's assertion. The July 15, 1982, authorization covering the remittances from BankCal to the Royal Bank expressly stated that BankCal might be instructed to transfer funds to petitioner's operating accounts. Indeed, the Royal Bank did, at petitioner's request, authorize BankCal to release the entire February and March 1983 note proceeds to petitioner for its operating expenses.

## Whether Petitioner was Excepted from Withholding Duty under Section 1441(c)(1)

Having found that petitioner was generally responsible under section 1441(a) for withholding tax from Marshall's interest income, we now address whether petitioner qualifies under section 1441(c) for exception from withholding responsibility. Section 1441(c)(1) provides that no withholding is required on any income item (other than for personal services) which is effectively connected with the conduct of a trade or business within the United States and which is included in the recipient's gross income under section 871(b)(2).

In order for the section 1441(c)(1) exception from withholding to apply, the regulations require that the person entitled to the income file with the withholding agent a statement showing certain information. Sec. 1.1441-4(a)(2), Income Tax Regs. The regulations provide that a properly executed Form 4224 will satisfy the required statement. In addition, the following time requirement is prescribed: "This statement shall be filed with the withholding agent for *each taxable year* of the person entitled to the income, and *before payment* of the income in respect of which it applies." Sec. 1.1441-4(a)(2), Income Tax Regs. (emphasis added).

Respondent argues that Marshall failed to timely file Form 4224 for 1982 and failed to file one at all for 1983. Therefore, respondent contends that petitioner cannot avail itself of the section 1441(c)(1) exception from withholdings. In the alternative, respondent asserts that Marshall's interest income was not income effectively connected with a trade or business of Marshall's in the United States. Petitioner counters that the Form 4224 that Marshall filed with petitioner did qualify it for exception from withholding pursuant with section 1441(c)(1). Petitioner goes on to argue that Marshall's interest income was effectively connected with his United States trade or business.

We agree with respondent. Sometime in 1983, Marshall filed a Form 4224 for taxable year 1982. The regulations, however, clearly provide that the statement is only effective prospectively: "This statement shall be filed * * * *before payment* of the income in respect of which it applies." Sec. 1.1441-4(a)(2), Income Tax Regs. (emphasis added). Petitioner makes no argument on the timeliness of Marshall's 1982 Form 4224. Accordingly, we hold that petitioner is not

excepted from withholding responsibility pursuant to section 1441(c)(1).

With respect to taxable year 1983, petitioner argues that another Form 4224 was not required. Petitioner does not, however, challenge the regulations, which plainly require that a statement be filed for each taxable year. Rather, petitioner contends that its position is supported by "misleading" instructions on Form 4224, which state:

When the income to which the form applies is no longer effectively connected with the conduct of a trade or business in the United States, promptly notify your agent by letter.

Petitioner argues that these instructions led Marshall to believe that no new form was required for 1983 so long as there was no change in circumstances.

Petitioner, however, fails to cite the remaining instructions to Form 4224, which in relevant part state that the form "applies *only for the tax year* of the owner whose name appears on the form." (Emphasis added.) In addition, the first line on Form 4224, as filled out by Marshall, provides that "This exemption is applicable *for calendar year 1982.*" (Emphasis added.) Therefore, after examining Form 4224 and instructions therein, we are unpersuaded that the instructions reasonably lead to any conclusion other than that the form must be filed for each taxable year. Furthermore, even if the instructions were misleading, the sources of authoritative law in the tax field are the statute and regulations and not Government publications. See *Green v. Commissioner,* 59 T.C. 456, 458 (1972); see also *Adler v. Commissioner,* 330 F.2d 91, 93 (9th Cir. 1964), affg. a Memorandum Opinion of this Court.

Because petitioner failed to meet the requirements of section 1.1441-4(a)(2), Income Tax Regs., for 1983, viz, no Form 4224 was filed, we hold that petitioner was not excepted from section 1441(a) withholding duty. Accordingly, we do not reach the issue of whether Marshall's interest income was effectively connected with a U.S. trade or business for purposes of section 1441(c)(1).

In light of the foregoing,

*Decision will be entered for the respondent.*