GLORIA T. BLATT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blatt v. Commissioner
Docket No. 12456-92
United States Tax Court
T.C. Memo 1993-550; 1993 Tax Ct. Memo LEXIS 558; 66 T.C.M. (CCH) 1409; November 23, 1993, Filed *558 Pursuant to the divorce decree of P and B, Teachers Insurance and Annuity Association-College Retirement Equities Fund transferred 58 percent of the balance of B's sec. 403(b), I.R.C., tax-sheltered annuity (TSA) to P's TSA. Held: The funds transferred from B's TSA to P's TSA are taxable to P in the year of transfer. For petitioner: Lawrence P. Schweitzer. For respondent: Tanya M. Marcum. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court pursuant to a petition filed by Gloria T. Blatt (petitioner) for redetermination of respondent's determination of a deficiency of $ 96,787 in petitioner's 1987 Federal income tax. The issue for decision is whether a lump sum pension distribution from the section 403(b) plan of petitioner's former spouse that was transferred into petitioner's existing section 403(b) plan, pursuant to a divorce decree, is taxable income to her in the year of transfer. [1] We hold that the lump sum pension distribution is taxable to petitioner in 1987. *559 FINDINGS OF FACT Pursuant to Rule 122(a), the parties submitted this case to the Court without trial, on the basis of pleadings and the facts recited in a joint stipulation with accompanying exhibits. The facts in the joint stipulation and exhibits attached thereto are incorporated herein by this reference. At the time she filed her petition, petitioner resided in East Lansing, Michigan. Petitioner married Frank J. Blatt (Blatt) on September 1, 1946. Petitioner filed a divorce complaint on October 4, 1985, and the divorce was finalized on July 21, 1987. The divorce decree contains a qualified domestic relations order (QDRO) under section 414(p). During 1987, the year in issue, petitioner was employed by Oakland University in Michigan as a professor of education. In that year, pursuant to the divorce decree, the Teachers Insurance and Annuity Association-College Retirement Equities Fund transferred $ 194,304.28 from Blatt's section 403(b) tax-sheltered annuity (TSA) into petitioner's preexisting TSA. The amount transferred represented 58 percent of Blatt's interest in his TSA. Petitioner did not report any of this amount on her 1987 Federal income tax return. Respondent *560 determined that this amount was a taxable pension distribution that did not qualify for rollover treatment. OPINION Unless the transfer of $ 194,304.28 from Blatt's TSA into petitioner's pre-existing TSA was a qualified rollover under the Internal Revenue Code, the entire amount constitutes taxable income to petitioner. Secs. 72, 403(b). Respondent argues that the transfer is not a qualified rollover and cites section 402(a)(6)(F) to support her argument. [2] Petitioner counters that section 403, which governs TSA's, is the relevant section, and that the transfer qualifies as a rollover under section 403(b)(8)(A)(ii). [3] *562 We disagree with petitioner; a distribution under a QDRO is not treated as a rollover under that section unless it qualifies under section 402(a)(6)(F). Sec. 403(b)(8)(C). [4]Section 402(a)(6)(F) provides special rules for QDRO's, generally requiring that a distribution from a TSA must be transferred to an individual retirement account or to an individual retirement annuity in order to constitute a nontaxable rollover; the section does not contemplate a transfer to a TSA. Thus, the transfer of money from Blatt's TSA to petitioner's TSA was taxable to petitioner *561 in the amount of $ 194,304.28. Petitioner argues that Congress' demonstrated intent generally is to permit tax-free rollovers as part of divorce judgments. However, petitioner cites no specific authority to support her proposition that a transfer from Blatt's TSA to hers is a tax-free rollover. Absent such authority to bolster her argument, petitioner leaves us with only an unsupported belief to guide our thinking. Petitioner also argues that she relied on various Internal Revenue Service (IRS) instructional guides in preparing her 1987 return, none of which indicated that a transfer from one TSA to another TSA pursuant to a QDRO is taxable. We do not find petitioner's argument persuasive. The Code and regulations are authoritative sources of tax law; IRS instructional guides are not. [5]Casa de La Jolla Park v. Commissioner, 94 T.C. 384, 396 (1990); CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1069 (1982), *563 affd. 775 F.2d 790 (11th Cir. 1985); Green v. Commissioner, 59 T.C. 456, 458 (1972). However, we empathize with petitioner on the facts presented here. One might reasonably expect that the transfer herein would fall within the tax-free zone. When undertaking a transaction dependent on tax benefits, however, the taxpayer should be careful to ascertain the literal reading of the law when the path is otherwise uncertain. Petitioner's incorrect belief as to the transfer of the distribution from Blatt's TSA to her TSA is not sufficient to enable petitioner to escape taxation of the distribution. Cf. Tolliver v. Commissioner, T.C. Memo. 1991-460. *564 We have considered petitioner's other arguments and find them to be without merit. Footnotes
1. The Court has severed, for decision in a separate opinion, the issue of whether the stock redemption payments made to petitioner incident to her divorce by a corporation owned equally by petitioner and her former spouse prior to the redemption are taxable to her in 1987, the year of the redemption, or are nontaxable under sec. 1041.↩
2. Sec. 402(a)(6)(F) provided: If -- (i) within 1 taxable year of the recipient, the balance to the credit of the recipient by reason of any qualified domestic relations order (within the meaning of sec. 414(p)) is distributed or paid to the recipient, (ii) the recipient transfers any portion of the property the recipient receives in such distributions to an eligible retirement plan described in subclause (I) or (II) of paragraph (5)(E)(iv), and (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
then the portion of the distribution so transferred shall be treated as a distribution described in paragraph (5). Paragraph (5) generally described what distributions are treated as rollover amounts. Subclauses (I) and (II) of paragraph (5)(E)(iv) define as "eligible retirement plans" an individual retirement account and an individual retirement annuity. Tax-sheltered annuities described in sec. 403(b)↩ are not included in this definition.
3. Sec. 403(b)(8)(A) provides: If -- (i) any portion of the balance to the credit of an employee in an annuity contract described in paragraph (1) is paid to him, (ii) the employee transfers any portion of the property he receives in such distribution to an individual retirement plan or to an annuity contract described in paragraph (1), and (iii) in the case of a distribution of property other than money, the property so transferred consists of the property distributed, then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.
"An annuity contract described in paragraph (1)", sec. 403(b)(8)(A)(i), is a TSA. Sec. 403(b)(1)↩.
4. Sec. 403(b)(8)(C) provides in part that rules similar to the rules of sec. 402(a)(6)(F) shall apply for purposes of subparagraph (A) of sec. 403(b)(8)↩.
5. Petitioner does not allege that these instructional guides stated that such a transfer would not be taxable. Although petitioner alleges that the IRS publications she read mislead the public by omission, she has not proven estoppel; for example, petitioner did not sufficiently establish the crucial element of a false representation or wrongful, misleading silence by the Government. See Rule 142(a); Kronish v. Commissioner, 90 T.C. 684, 695 (1988); see also Tolliver v. Commissioner, T.C. Memo. 1991-460↩.