Gustafson, J., dissenting: The Commissioner argues that petitioners are liable under section 6662(a) for an accuracy-related penalty of about $1,494, because of an “underpayment” of their tax. Colloquially, one could certainly say that petitioners “underpaid” their 2008 income tax by claiming refundable credits to which they were not entitled. However, as the majority opinion explains, in a case like this one an “underpayment” is defined in section 6664(a)(1)(A), and it exists only where the tax “imposed” exceeds the tax “shown” (i.e., “the amount shown as the tax by the taxpayer on his return”). The majority opinion corrects one significant fallacy in the Commissioner’s reckoning (i.e., the Commissioner’s erroneous assumption that there can be a “negative amount of tax” for purposes of computing the underpayment to be penalized); but the majority still holds petitioners liable for a lesser penalty (about $29) that, though modest in amount, contradicts an important principle: The IRS has no authority to impose, and the courts have no authority to sustain, a penalty that Congress did not enact.[1] I. Introduction For 2008 petitioners filed a Form 1040, “U.S. Individual Income Tax Return”, on which they reported income and tax but also claimed refundable credits (to which they were not entitled). As a result, petitioners incorrectly reported no balance due but rather claimed an overpayment and a refund to which they were not entitled. In particular, Form 1040 for 2008 required petitioners to report “Tax” on line 44, “Alternative minimum tax” on line 45, and the total of those on line 46. The form called for various non-refundable credit amounts not at issue here on lines 47-55, “Self-employment tax” on line 57, and “total tax” on line 61. As their “total tax”, petitioners reported $144. (I submit that this $144 amount is “the amount shown as the tax by the taxpayer on his return” for purposes of section 6664(a)(1)(A)). Thereafter, in the section of Form 1040 entitled “Payments”, petitioners claimed an “Earned income credit” (line 64a), an “Additional child tax credit” (line 66), and a “Recovery rebate credit” (line 70), to which they were not actually entitled. They reported “total payments” of $7,471 (consisting solely of those excessive claimed credits) and therefore reported an “amount you overpaid” of $7,327 on line 72, and they requested on line 73 that it all be “refunded to you”. The IRS determined against petitioners an accuracy-related penalty pursuant to section 6662(a). That penalty depends on (among other things) “the amount shown as the tax by the taxpayer on his return”. Rather than using the “total tax” of $144 that petitioners reported on line 61 of their return as the tax shown, the IRS used negative $7,327 (i.e., the erroneous overpayment petitioners claimed on line 72), and the majority uses zero (an amount calculated by subtracting the excess credits from the tax reported, but not going below zero). Neither of these approaches is warranted by the statute. II. The governing law Under our Constitution, it is Congress that enacts laws. See U.S. Const. art. I, sec. 7, cl. 1. The first enumerated power given to Congress (and not to the Executive or the courts) is the “Power To lay and collect Taxes, Duties, Imposts and Excises”. Id,., sec. 8, cl. 1.[2] As the Supreme Court observed in Whitman v. Am. Trucking Ass’ns, 531 U.S. 457, 472 (2001): Article I, § 1, of the Constitution vests “[a]ll legislative Powers herein granted * * * in a Congress of the United States.” This text permits no delegation of those powers * * *. Only the legislature can legislate. Only Congress can enact tax laws. Section 6664(a) defines the “underpayment” to which the accuracy-related penalty of section 6662 applies. Section 6664(a) provides as follows: SEC. 6664(a). UNDERPAYMENT. — For purposes of this part, the term “underpayment” means the amount by which any tax imposed by this title exceeds the excess of— (1) the sum of— (A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over (2) the amount of rebates made. For purposes of paragraph (2), the term “rebate” means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made. In simplified terms, the “underpayment” is the excess of one’s actual liability over his reported liability — i.e., tax “imposed” minus tax “shown” equals “underpayment”. By statute Congress has authorized the Secretary of the Treasury to prescribe “regulations for the enforcement of” the Internal Revenue Code, see sec. 7805(a); and where such authorized regulations interpret a statute, the courts defer to that interpretation, see Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-845 (1984). Notably, in Feller v. Commissioner, 135 T.C. 497 (2010), a majority of this Court deferred to such a regulation — i.e., 26 C.F.R. section 1.6664-2(c)(l), Income Tax Regs. — to define tax “shown” (and thereby to define “underpayment”) in a manner not suggested in the statute.[3] However, the regulations that define an “underpayment” include no provision to the effect that excess refundable credits somehow reduce tax “shown”. There is no other law governing the issue in this case— unless we invent it. III. Discussion Without doubt, Congress could impose a penalty for claiming refundable credits to which one is not entitled. The question we face is whether in fact Congress did so in section 6662(a) when it imposed the accuracy-related penalty on “underpayments”, defined in section 6664(a)(1)(A) as “tax imposed” minus “amount shown”, or whether instead the IRS and the majority go beyond the statute in determining a penalty liability for improperly claimed refundable credits. A. The Commissioner’s position and the majority opinion are at odds with the plain meaning of “the amount shown as the tax by the taxpayer on his return”. The term at issue is “the amount [1] shown [2] as the tax [3] by the taxpayer [4] on his return”. Sec. 6664(a)(1)(A). Under section 6664(a) this amount is subtracted from “tax imposed” (i.e., the actual tax liability) to yield the “underpayment”. The plain meaning of this term could hardly be clearer: In the first place, the amount in section 6664(a)(1)(A) is an amount “shown”. It is therefore an amount that is visible. The plain language steers us away from an amount that would need to be determined by investigation or correction and points us simply to what is “shown” — in this case, the $144 amount shown by petitioners as “total tax” on line 61. However, both the Commissioner and the majority opinion substitute for this amount “shown” a lesser amount computed by subtracting excess credits. Neither of the resulting numbers (i.e., neither the Commissioner’s proposed negative $7,327 nor the majority’s zero amount) is shown anywhere on petitioners’ 2008 return as an amount of “tax”, so the Commissioner and the majority look to an amount that is not shown as tax and thereby ignore the plain language of the statute that describes an amount “shown”. Second, the amount in section 6664(a)(1)(A) is “tax”. Of course, the Code also has provisions about other kinds of amounts — e.g., of income, deductions, costs, basis, exclusions, credits, payments, penalties, and so on — but section 6664(a)(1)(A) refers to an amount of “tax”, a term not at all interchangeable with those other kinds of amounts. But both the Commissioner and the majority compute an amount that consists of tax reduced by excess refundable credits. However, the plain meaning of the statutory language restricts us to “tax” that is shown on the return, and the statutory language gives no warrant for injecting excess credits into the equation. Third, section 6664(a)(1)(A) looks to an amount shown “by the taxpayer”. Of course, the Code authorizes the IRS to make its own determinations of amounts relevant to tax liabilities; but plainly section 6664(a)(1)(A) describes an amount shown “by the taxpayer”. The Commissioner and the majority correct the amount shown “by the taxpayer^]” on their return, $144, and replace it with other numbers that they determine. Their methods thus wander from the plain language of section 6664(a)(1)(A), which looks to an amount shown “by the taxpayer”. Fourth, the amount in section 6664(a)(1)(A) is an amount shown as tax “on his return”. The Commissioner designed Form 1040 and designated certain items and not others as “tax”. Petitioners were required to use Form 1040 and did so. By using an amount other than the $144 that petitioners reported as “total tax” on the prescribed return, the Commissioner and the majority contradict the plain meaning of the statutory description of an amount of tax “on the return”. B. The Form 1040 “return” has never “shown as the tax” an amount reduced by refundable credits. The critical term in section 6664(a)(1)(A) is the “amount shown as the tax on the return”. (Emphasis added.) Section 6011(a) authorizes the IRS to prescribe returns and requires taxpayers to use them. In 26 C.F.R. section 1.6012-l(a)(6), Income Tax Regs., the IRS has prescribed Form 1040. It is therefore appropriate to accord great weight to the manner in which tax and refundable credits are characterized on Form 1040. In fact, Form 1040 calls for a computation of “total tax” (without reduction by refundable credits) and only then calls for the refundable credits to be reported as “payments”, consistent with the Code.[4] Form 1040 was so arranged when refundable credits were first allowed in 1975;[5] and when Congress enacted the current penalty regime in 1989 (and employed the “shown * * * on his return” definition), the Form 1040 return most recently in use — i.e., the Form 1040 for 1988 — reflected this same arrangement.[6] The IRS has always constructed the Form 1040 return in such a way that “total” tax is figured first and then refundable credits are characterized as “payments” of that tax. The IRS has never prescribed an individual income tax return on which there was “shown as the tax” an amount that had already been reduced by refundable credits. I do not suggest that IRS forms and instructions are generally precedential. Cf. Casa De La Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990) (“The sources of authoritative law in the tax field are the statute and regulations and not government publications”). But here the statutory definition of “underpayment” utterly depends on and incorporates the “return”. By definition, petitioners cannot owe the penalty unless they under-reported “the amount shown as the tax * * * on * * * [their] return” (emphasis added) — but the parties and the majority admit that the “total tax” of $144 that they did show on their return was correct. Everyone agrees that the tax imposed, $144, was the “total tax” amount shown on the return. Given the wording of section 6664(a)(1)(A), one cannot ignore petitioners’ actual “return” in finding an underpayment and imposing the accuracy-related penalty. C. The definition of “deficiency” in section 6211 does not alter the definition of “underpayment” in section 6664(a). To interpret the “underpayment” definition in section 6664(a), the majority looks to the “deficiency” definition in section 6211(b)(1), which employs similar phrases, but the majority thereby draws incorrect inferences. In defining a tax “deficiency”, section 6211(b)(1) provides that “[t]he tax imposed * * * and the tax shown * * * shall both be determined without regard to” certain credits but does not provide for disregarding the refundable credits at issue here. The majority therefore invokes the canon expressio unius est exclusio alterius and infers that, as a general rule, “tax shown” must therefore include all those credits (else no exclusion of any would have been necessary). And the majority opinion goes on to note that no such exclusions are provided in section 6664(a) defining “underpayment”, and therefore “underpayment” must be determined with regard to these unmentioned credits. That is, the opinion effectively holds that “tax imposed” and “tax shown” must generally mean tax after (among other things) the refundable credits at issue here. For two reasons this argument is untenable. First, if not only tax “shown” but also “tax imposed by this title” (emphasis added) should generally be understood to refer to tax net of refundable credits, then other Code sections that refer to “tax imposed by this title” but that do not explicitly exclude the netting of credits might become very problematic. Section 6001 requires that “[e]very person liable for any tax imposed by this title * * * shall keep such records * * * as the Secretary may from time to time prescribe”, and section 6011(a) requires that a return be filed by “any person made liable for any tax imposed by this title”. For taxpayers who are entitled to refundable credits, these requirements apply not only if they report a balance due but also if they are entitled to a refund. Section 6501(a) provides for assessment of “tax imposed by this title” (and the IRS duly assessed the $144 “total tax” that petitioners reported on their 2008 return and separately recorded the allowance of the credits claimed). Section 6511(a) sets a deadline for the filing of a claim for refund of “any tax imposed by this title”. It would be nonsense to suggest that this deadline does not apply where the claimed overpayment arises from refundable credits. These provisions have always been (rightly) understood to apply where there is a tax liability, whether or not that liability has been satisfied by refundable credits. That is, it is a truism that “tax imposed” does not generally mean “amount of tax due after application of refundable credits”. It is hard to imagine administering the provisions listed above if it were otherwise. The inference that an internal revenue statute that addresses “tax imposed” — or “tax shown” — without mentioning refundable credits must refer to the tax due after such credits is manifestly unwarranted. Second, the majority states that it “see[s] no evidence of a contrary congressional intent” (i.e., intent contrary to its expressio unius construction), but it describes no inquiry into the congressional intent that did produce the critical language in section 6211. See op. Ct. p. 388. In fact, the clarification in section 6211(b)(1) that “[t]he tax imposed * * * and the tax shown * * * shall both be determined without regard to” withholding credits is a truism whose presence has a historical explanation. After income tax withholding was inaugurated in 1943, the definition of “deficiency” had to be changed in order to prevent non-rebate refunds (i.e., refunds of over-withheld tax) from inappropriately increasing the amount of a deficiency. In 1944 Congress therefore employed and defined the concept of a “rebate” refund (now in section 6211(b)(2)) and — important to the current discussion — noted that tax “imposed” and tax “shown” did not include the relatively new withholding credit. See Feller v. Commissioner, 135 T.C. at 536-538. At that time, there were no refundable credits. Congress’ 1944 expressio as to withholding credits made no implication whatsoever as to the alterius of refundable credits that would not exist until 1975. The silence of section 6211(b)(1) about refundable credits (which did not then exist) should not give rise to an aberrant definition of section 6664(a)(1)(a) that assumes that “tax” imposed and shown somehow includes refundable credits not mentioned in either statute. D. The rule of lenity calls for a strict construction of the penalty. The majority opinion is correct that the “rule of lenity” requires that penalty statutes be “construed strictly”. Commissioner v. Acker, 361 U.S. 87, 91 (1959); see op. Ct. pp. 392-393. The majority aptly invokes this canon to conclude “that section 6662 does not impose a penalty on the refundable portion of erroneously claimed earned income credits, additional child tax credits, and recovery rebate credits”, see op. Ct. p. 393; but it fails to observe that the same canon counsels against expanding the penalty to make it apply where refundable credits were overstated but “tax” was not understated. Applying the rule of lenity, we should construe “tax” strictly to mean tax, rather than construing it loosely to mean tax minus refundable credits. We should construe “shown as the tax * * * on his return” strictly to mean shown as the tax on his return, rather than construing it loosely to mean not really shown as the tax on his return. IV. Conclusion The parties and the majority agree that the tax “imposed” is $144, and there is no dispute that $144 was shown as the “total tax” on line 61 of petitioners’ return. There is therefore no “underpayment” as defined in section 6664(a)(1)(A) and, as a result, no penalty can be imposed under section 6662(a). Halpern and Goeke, JJ., agree with this dissent. In Feller v. Commissioner, 135 T.C. 497, 526 — 543 (2010) (Gustafson, J., dissenting), I made a similar critique of this Court’s Opinion imposing the fraud penalty of section 6663; but in one respect the majority’s error in this case is more extreme: The outcome in Feller was supported by a regulation, i.e., 26 C.F.R. section 1.6664-2(c)(l), Income Tax Regs, (which the majority held valid, over my dissent); but in this case there is no equivalent regulation to define “tax shown” in such a way as to support the imposition of the penalty. This absence of a regulation makes all the more appropriate the invocation of the rule of lenity (discussed below) to construe the penalty statute narrowly. Cf. Babbitt v. Sweet Home Ch. of Comtys. for a Great Or., 515 U.S. 687, 704 n.18 (1995) (“We have applied the rule of lenity * * * where no regulation was present”). Article I, Section 7, Clause 1 of the Constitution includes an additional democratic provision particular to tax law: “All bills for raising revenue shall originate in the House of Representatives” — i.e., the house that (in James Madison’s words) “speakfs] the known and determined sense of a majority of the people”. See The Federalist No. 58 (James Madison) (the two houses have “equal authority * * * on all legislative subjects, except the originating of money bills”, which authority is conferred on “the House [of Representatives], composed of the greater number of members, * * * and speaking the known and determined sense of a majority of the people”). Article I, Section 9, Clause 4 of the Constitution originally prohibited “direct” taxes; and when the Constitution was amended to curtail that prohibition, the Sixteenth Amendment provided (echoing Article I, section 8) that “[t]he Congress shall have power to lay and collect taxes on incomes”. See note 1, above. An analogous regulation defines “tax shown” for purposes of avoiding the penalty for failure to pay estimated tax: One can pay “100 percent of the tax shown on the return of the individual for the preceding taxable year.” Sec. 6654(d)(l)(B)(ii) (emphasis added). The statute is silent about credits, but the regulations make it appear that “tax shown” means tax minus refundable credits (but not withholding credits or payments of estimated tax). See 26 C.F.R. sec. 1.6654-2(a)(l)(i), (b)(l)(iii), (b)(2)(i). But again, there is no such regulation pertinent to the accuracy-related penalty of section 6662. The portion of a refundable credit that exceeds the tax liability is an “overpayment”, see secs. 37, 6401(b)(1); an overpayment is by definition a “part of the amount of the payment”, sec. 6401(a) (emphasis added); and the refundable credit is therefore treated in the Code as a payment. By contrast, norcrefundable credits are limited to and can never exceed the amount of the tax liability, see sec. 26(a), and thus never reduce the liability below zero. When the first refundable credit (the earned income tax credit) appeared on the Form 1040 for 1975, “Tax” was computed on line 16a and was reduced by certain credits before the addition of “Other taxes” (line 19) to yield a “Total” (line 20). From that were subtracted withholding, estimated payments, the EITC (line 21c), and other payments to yield (on line 23 or line 24) either a “BALANCE DUE IRS” (not a “tax”) or an “amount OVERPAID”. That is, the 1975 Form 1040 reflected that credit amounts like these are in the nature of payments, not tax. The Form 1040 for 2008 was similar in all material respects to the Form 1040 for 1975. On the Form 1040 for 1988, the “Tax Computation” section (consisting of lines 32 through 40) included, after the computation of taxable income, a line 38 on which one was to “Enter tax”, a line 39 for “Additional taxes”, and a line 40 that totaled lines 38 and 39. The next section, entitled “Credits” (lines 41 through 47), consisted not of refundable credits in the nature of payments against the tax liability but instead credits (such as the child care credit and the foreign tax credit) that are taken into account in figuring the tax liability. Thereafter, a section of “Other Taxes” (lines 48 through 53) included, for example, the self-employment tax and the alternative minimum tax; and it ended with line 53, which read: “Add lines 47 through 52. This is your total tax” (bold in original). Only after this “total tax” on line 53 did the 1988 return include, in the section of the return entitled “Payments”, an entry (at line 56) for “Earned income credit”, which was one of the items that yielded “total payments” on line 61. The net amount due after these “total payments” was not referred to as tax, but either as an “amount OVERPAID” (line 62) or as an “AMOUNT YOU OWE” (line 65). This is what in fact appeared on a “return” at the time Congress defined a taxpayer’s underpayment as “tax imposed” minus tax “shown * * * on his return”. The Form 1040 for 2008 was similar in all material respects to the Form 1040 for 1988.