# United States Tax Court

T.C. Summary Opinion 2022-19

ROBERT LESTER POWELL AND SVETLANA ALEKSEEVNA
IAKOVENKO,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

_____

Docket No. 20268-19S.                    Filed September 26, 2022.

_____

Robert Lester Powell and Svetlana Alekseevna Iakovenko, pro sese.

*Evan K. Like*, for respondent.

## SUMMARY OPINION

COPELAND, *Judge*:  This case was submitted pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Furthermore, this case was submitted to the Court fully stipulated for a decision without trial pursuant to Rule 122.

Petitioners, Robert Powell and Svetlana Iakovenko, received an advance premium tax credit (APTC) in monthly installments during their 2017 tax year under the Patient Protection and Affordable Care

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

Act.[2]   That year they claimed a $123,822 long-term capital loss deduction, which the Internal Revenue Service (IRS) limited to $3,000 in a subsequent math error notice.  As a result of the mathematical adjustment, petitioners' household income exceeded the allowable limits for a Premium Tax Credit (PTC).  Thus, the IRS determined that: they were not entitled to a PTC of $636 previously credited to them; they had an excess APTC of $17,652; and after allowing $4,000 of newly claimed tuition and fee deductions, they had a resulting deficiency of $17,288 for the 2017 tax year.  Petitioners seek a redetermination of that deficiency, which was set forth by the IRS in a statutory notice of deficiency dated August 23, 2019.

The issues[3] for decision are:

(1) whether petitioners' claimed $123,822 long-term capital loss for 2017 is limited to $3,000 under section 1211(b);

(2) whether petitioners are eligible for a 2017 PTC of $636 under section 36B; and

(3) whether petitioners received an excess APTC of $17,652 for 2017, thereby increasing their tax under section 36B(f)(2)(A).

We note that the second and third issues are dependent on our determination of the first (i.e., the amount of capital loss for 2017).

---

[2] The APTC is a payment made to individuals who enroll in qualified health plans during a year for which they are likely to qualify (at the end of such year) for the Premium Tax Credit (PTC) under section 36B.  *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1412, 124 Stat. 119, 231–33 (2010).  The PTC is a tax credit designed to offset the costs (for those who meet certain financial eligibility criteria) of enrolling in health insurance through a qualifying state or federal exchange.  A taxpayer's PTC is reduced by the total APTC received during the year, and the taxpayer's federal income tax liability generally is increased by any excess of the APTC over the finally determined PTC.  I.R.C. § 36B(f).

[3] Petitioners argue that the sole issue is limited to whether they are entitled to the full $123,822 capital loss reported on their 2017 return (i.e., whether or not the capital loss was limited to $3,000 under section 1211(b)).  Because the capital loss adjustment was made in a section 6213(b)(1) math error notice that preceded the notice of deficiency and petitioners' payment of the tax, we treat petitioners as claiming an overpayment.  Petitioners' overpayment claim was raised in the Petition and Amended Petition, and it was thoroughly briefed.  We are not aware of any concessions or abandonment by respondent as to the limitation of capital losses, the disallowance of the PTC, or the repayment of the APTC.  The remaining issues were raised in the statutory notice of deficiency and continually raised throughout the proceedings.

*Background*

The following facts are based on the pleadings and the parties' Stipulation of Facts, including the exhibits attached thereto. Petitioners resided in Ohio when they timely filed their Petition. Mr. Powell is a professional computer programmer. During the 2017 tax year petitioners were enrolled in health insurance provided by HMO Louisiana, which they purchased through the Health Insurance Marketplace. Petitioners' health insurance premium was $1,524 per month from January 1, 2017, through December 31, 2017. A monthly APTC of $1,471 was paid to HMO Louisiana on behalf of petitioners for each month of 2017, totaling $17,652.

Petitioners timely filed a joint 2017 Form 1040, U.S. Individual Income Tax Return, where they reported the following items, most of which are not in dispute: wage income of $61,234; taxable interest of $953; ordinary dividends of $245; taxable individual retirement account distributions of $38,392; unemployment compensation of $10,112; Social Security benefits of $13,982, of which $11,885 was reported as taxable; and a $123,822 long-term capital loss. The capital loss was reported on Schedule D, Capital Gains and Losses, attached to the 2017 Form 1040.

Petitioners reported −$1,001 of adjusted gross income (AGI) for 2017 as a result of the capital loss. Because they reported no taxable income, they claimed a $10,873 refund, the amount of federal income tax withheld from their wages. They reported no PTC or APTC receipts, and they did not attach the required Form 8962, Premium Tax Credit, to their 2017 Form 1040.

On June 18, 2018, the IRS mailed to petitioners a Notice CP11, Changes to your 2017 Form 1040 (math error notice), notifying them that their 2017 Form 1040 was adjusted to limit their capital loss to $3,000. The limitation resulted in an increase to petitioners' AGI from −$1,001 to $119,820, and a corresponding increase in taxable income from $0 to $94,970. Consequently, the IRS determined that petitioners were not entitled to a refund but instead bore an additional income tax liability of $4,311, plus interest. On or about June 22, 2018, petitioners paid the amount shown on the math error notice.

At or around this time, the IRS examined petitioners' 2017 return. During the examination, petitioners submitted a revised Form 1040 for 2017, but the IRS did not process it. The revised Form 1040 was not submitted with a Form 1040X, Amended U.S. Individual Income

Tax Return, so it is not referred to as an amended return. The revised Form 1040 included Form 8917, Tuition and Fees Deduction, claiming an additional $4,000 deduction, which the IRS subsequently allowed during the examination. In concluding the examination, the IRS determined that petitioners were not entitled to the PTC,[4] and accordingly they were required to repay the APTC they received during 2017. This adjustment increased their income tax liability by $17,652. The examination sustained the previous mathematical adjustment to capital losses but allowed the newly claimed tuition and fees deduction. Reflecting these determinations, the IRS issued a statutory notice of deficiency determining a proposed deficiency of $17,288.

*Discussion*

I. *Burden of Proof*

While the parties submitted this case for decision under Rule 122(a), such a submission "does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof." Rule 122(b).

Generally, the Commissioner's determinations in a statutory notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In certain circumstances, if the taxpayer introduces credible evidence with respect to a factual issue relevant to ascertaining the proper tax liability, section 7491(a)(1) shifts the burden of proof to respondent. Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent as to any issue of fact. *See Higbee v. Commissioner*, 116 T.C. 438, 442 (2001).

II. *Capital Loss*

The parties do not dispute that petitioners' long-term capital losses exceeded their long-term capital gains in 2017, resulting in a $123,822 net loss. But they do disagree as to how much of this loss petitioners may claim on Schedule D, and ultimately the 2017 Form 1040.

---

[4] While the date of receipt is not clear from the record, petitioners' account was credited at some point with a PTC of $636.

Petitioners argue they overpaid their 2017 taxes as a result of the $123,822 loss they incurred. Importantly, the overpayment claim stems from amounts claimed on the original return they filed, the revised return, and the math error notice.

Section 6213(b) governs assessments arising out of mathematical or clerical errors; it requires notice to the taxpayer under subsection(b)(1) and abatement under subsection (b)(2) if the taxpayer so requests within 60 days of the notice. Petitioners did not request abatement after receiving the math error notice, and they paid the tax due. However, that payment does not end our inquiry. As we stated in *Winter v. Commissioner*, 135 T.C. 238, 243–44 (2010):

> Section 6213 gives the Tax Court jurisdiction to redetermine a deficiency when a petition is filed timely in response to a notice of deficiency. Such jurisdiction does not depend on whether the Commissioner's determination in the notice of deficiency is correct as "it is not the *existence* of a deficiency but the Commissioner's *determination* of a deficiency that provides a predicate for Tax Court jurisdiction." *Hannan v. Commissioner*, 52 T.C. 787, 791 (1969). Once we have jurisdiction, it generally covers all items necessary to determine the correct tax. Section 6214(a) gives the Tax Court jurisdiction to "redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount * * * [in the notice]".

(Footnote omitted.) (Alteration in original.) Furthermore, section 6512(b) clarifies that the Court also has jurisdiction to determine overpayments.

Because we have jurisdiction to determine the correct amount of tax, we analyze the allowable amount of capital loss, despite the fact that petitioners did not properly contest the math error notice.

When calculating their capital loss, petitioners argue that part of the text included in the Schedule D controls. They suggest this Court use an "If-Then-Else" conditional approach to determining the loss. This approach is a common command in many programming languages and works in the following way: *if* a condition is met, *then* take action X, *else*

take action Y.[5]   Petitioners argue this approach comports with "well established, published and readily available authorities on English language, logic (both classic conditional reasoning and computer programming) and mathematics."   Using this approach, petitioners interpreted line 21 of Schedule D as directing them to deduct a capital loss of $123,822 because negative $123,822 is mathematically smaller than negative $3,000.

We begin our analysis with section 1211(b), which limits capital losses as follows:

> In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus (if such losses exceed such gains) the lower of—
>> (1)   $3,000 ($1,500 in the case of a married individual filing a separate return), or
>> (2)   the excess of such losses over such gains.

We then turn to the text of Schedule D, line 21, for the 2017 tax year, which states as follows:

> If line 16 is a loss, enter here and on Form 1040, line 13, or Form 1040NR, line 14, the **smaller** of:
>
> - The loss on line 16 or
> - ($3,000), or if married filing separately, ($1,500)
>
> **Note**: When figuring which amount is smaller, treat both amounts as positive numbers.

Accordingly, Schedule D required petitioners to treat the amounts as positive numbers when determining whether their loss was greater or less than $3,000, which would have resulted in a maximum reportable capital loss for 2017 of $3,000.[6]

Consequently, Schedule D comports with section 1211(b); but more importantly, the statutes control—not the language of the IRS

---

[5] *See, e.g.*, The Java Tutorials, *The if-then and if-then-else Statements*, Oracle, https://docs.oracle.com/javase/tutorial/java/nutsandbolts/if.html (last visited July 28, 2022).

[6] The remainder would carry forward to the succeeding taxable year, here 2018, under section 1212(b).

form. When the statute is clear, as here, we look no further than the statute to determine the meaning. *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989). We have consistently held that Form 1040 and its instructions "cannot affect the operation of the tax statutes or [a taxpayer's] obligations thereunder." *Weiss v. Commissioner*, 129 T.C. 175, 177 (2007) (citing *Casa De La Jolla Park, Inc. v. Commissioner*, 94 T.C. 384, 396 (1990)). Likewise, Schedule D and its instructions cannot affect petitioners' obligations because "even if the instructions were misleading, the sources of authoritative law in the tax field are the statute and regulations and not government publications." *See Casa De La Jolla Park, Inc.*, 94 T.C. at 396.

Section 1211(b) likewise refers to losses as positive numbers and limits the amount of capital losses deductible on Form 1040, whereas section 1212(b)(1) allows for the excess to be carried over to the succeeding taxable year. Section 1211(b) specifically provides that when the taxpayer's[7] losses exceed gains from the sale or exchange of capital assets, the taxpayer may claim only the "*lower of*" two numbers, $3,000 *or* the excess of such losses over such gains. (Emphasis added.) An example of the mechanics of section 1211(b) was illustrated in *Musselwhite v. Commissioner*, T.C. Memo. 2022-57, at *9, wherein we stated as follows:

> Mr. Musselwhite's $137,780 loss from the sale of the condominium on August 3, 2012 (i.e., "SALE OF INVESTMENT CONDO") was reported, together with a net long-term capital gain of $108,500, on an attached Schedule D; but because of section 1211(b), [the taxpayers'] total income included only the maximum amount allowed for a net capital loss (−$3,000).

Similarly, here we ask whether petitioners' total $123,822 loss as a positive number is lower than a $3,000 loss, which it is not. Therefore, petitioners may claim only a $3,000 capital loss on their 2017 Form 1040 and must carry over the excess to the succeeding year pursuant to section 1212(b)(1).

When section 1211(b) is read with section 1212(b)(1), Congress' intent is even more clear. Under section 1212(b)(1), taxpayers who deduct a capital loss under section 1211(b) must carry forward the

---

[7] Section 1211(b) does not apply to corporations.

excess loss to the succeeding tax year and use that loss to calculate the capital loss or gain for that succeeding tax year. Treas. Reg. § 1.1212-1(b)(1); *see Sham v. Commissioner*, T.C. Memo. 2020-119, at \*48 ("Pursuant to sections 1211(b)(1) and 1212(b)(1), [the taxpayer] is entitled to a capital loss deduction of $3,000 for 2015, and a corresponding reduction in the short-term capital loss (i.e., from $35,542 to $32,542) available as a carryforward." (citing I.R.C. § 1212(b)(2)(A)(i))). If we read section 1211(b) as petitioners propose, it would render section 1212(b) meaningless because no carryforward would ever exist. Therefore, we hold that petitioners are only entitled to a $3,000 capital loss, consistent with the math error notice, and must carry forward the excess capital loss to their 2018 tax year pursuant to section 1212(b). Consequently, petitioners' AGI for tax year 2017 is $119,820,[8] and they do not have an overpayment.

### III.    *Petitioners' Premium Tax Credit Eligibility*

Petitioners argue that they were entitled to a PTC of $636 and an APTC of $17,652 for tax year 2017.

The Patient Protection and Affordable Care Act § 1401, 124 Stat. at 213 (codified as amended at I.R.C. § 36B), added section 36B to the Internal Revenue Code, which subsidizes the cost of health insurance for those who qualify. *See* Treas. Reg. § 1.36B-2(a). A taxpayer[9] with a household income between 100% and 400% of the federal poverty line who enrolls in a qualified health plan may receive a PTC to subsidize the cost of that health plan. I.R.C. § 36B(a)-(c); Treas. Reg. § 1.36B-2(a) and (b); *see McGuire v. Commissioner*, 149 T.C. 254, 258–62 (2017). Household income is defined as the sum of the taxpayer's modified AGI plus any family member's modified AGI.[10]  I.R.C. § 36B(d)(2); Treas.

---

[8] When we account for the overall adjustments, we calculate an adjusted gross income of $119,821, but we rely on the parties' stipulation that the adjusted gross income is $119,820, which is likely a rounding difference.

[9] Married taxpayers must file joint federal returns (which petitioners did) in order to qualify for the PTC. *See* I.R.C. § 36B(c)(1)(C).

[10] Family members include people (1) for whom the taxpayer properly claims deductions for personal exemptions and (2) who are required to file a federal income tax return under section 1. I.R.C. § 36B(d)(2)(A); *see also* Treas. Reg. § 1.36B-1(e)(1). While petitioners claimed a personal exemption deduction for their child on their 2017 return, respondent makes no claim that this child was required to file a federal return or earned any income.

Reg. § 1.36B-1(e)(1). Modified AGI means the AGI, as defined by section 62, increased by three kinds of income:

> (i) any amount excluded from gross income under section 911 [relating to foreign earned income and housing costs for U.S. citizens living abroad],

> (ii) any amount of interest received or accrued by the taxpayer during the taxable year which is exempt from tax, and

> (iii) an amount equal to the portion of the taxpayer's social security benefits (as defined in section 86(d)) which is not included in gross income under section 86 for the taxable year.

I.R.C. § 36B(d)(2)(B); *see also* Treas. Reg. § 1.36B-1(e)(2). "Federal poverty line" means the most recently published poverty guidelines in effect on the first day of the regular enrollment period for coverage by a qualified health plan for a calendar year—in this case, November 1, 2016. I.R.C. § 36B(d)(3)(B); Treas. Reg. § 1.36B-1(h) (first citing 42 U.S.C. § 9902(2); and then citing 45 C.F.R. § 155.410).

Petitioners' PTC and APTC arguments hinge on this Court's allowing a deduction of their total $123,822 capital loss, which we held above was limited to $3,000. *See supra* pp. 4–8. Because section 1211(b) reduces petitioners' capital loss to $3,000, we must evaluate whether petitioners' modified AGI increased beyond the level of eligibility for the PTC and the APTC (i.e., whether it increased beyond 400% of the federal poverty line).

As discussed, petitioners' total $123,822 capital loss is limited to $3,000 under section 1211(b), and their 2017 AGI is increased to $119,820. *See* I.R.C. § 62. This change also increases petitioners' modified AGI to $121,917,[11] which in turn increases their household income to the same amount because they had no additional family members with income.

---

[11] When calculating petitioners' modified AGI, we include the $2,097 in nontaxable Social Security benefits received and reported on petitioners' 2017 Form 1040. *See* I.R.C. § 36B(d)(2)(B)(iii); Treas. Reg. § 1.36B-1(e)(2)(iii). Consequently, petitioners' modified AGI is $121,917.

We next compare petitioners' $121,917 household income to the federal poverty line in effect on the first day of the regular enrollment period for 2017 coverage by a qualified health plan to determine whether they met the section 36B requirements. The federal poverty line is updated periodically in the Federal Register by the Secretary of Health and Human Services (HHS) under the authority of the Community Opportunities, Accountability, and Training and Educational Services Act of 1998, Pub. L. No. 105-285, § 201, 112 Stat. 2702, 2729 (codified at 42 U.S.C. § 9902(2) (2012)). The first day of the regular enrollment period for 2017 was November 1, 2016. 45 C.F.R. § 155.410(e)(2) (2016). On that date, the federal poverty line for a family of three living in the 48 contiguous states was $20,160. *See* Annual Update of the HHS Poverty Guidelines, 81 Fed. Reg. 4036 (Jan. 25, 2016); *see also* I.R.C. § 36B(d)(3)(B); Treas. Reg. § 1.36B-1(h). Thus, 400% of the federal poverty line for a family of three was $80,640. Because petitioners' household income was well above that amount (at $121,917), petitioners failed to meet the federal poverty line requirements under section 36B(c)(1) and were not eligible for the PTC in 2017. *See* Treas. Reg. § 1.36B-2(b)(1); *see also McGuire*, 149 T.C. at 258–62.

Taxpayers who received an APTC are instructed by the IRS to use Form 8962 to reconcile (1) the amount of the APTC the taxpayer received during the year (which was based on their estimated eligibility) with (2) the amount of the PTC to which the taxpayer is actually entitled (which is based on household income when the taxpayer files his or her annual income tax return). *See* I.R.S. Publication 17, Your Federal Income Tax, 245–47 (Dec. 12, 2017). This reconciliation is done when the taxpayer files his or her annual income tax return and submits Form 8962 therewith. If the amount of the APTC is more than the amount of the PTC to which the recipient is ultimately entitled, the taxpayer owes back to the Government the excess credit, which is reflected as an increase in tax. *See* I.R.C. § 36B(f)(2)(A); *Keel v. Commissioner*, T.C. Memo. 2018-5, at *5–6. Here, petitioners' APTC of $17,652 exceeded the amount of the PTC to which they were entitled ($0). Consequently, respondent correctly included the $17,652 APTC in petitioners' federal income tax liability for the 2017 tax year.

IV.   *Conclusion*

In reaching this decision, the Court has considered all the parties' arguments, and to the extent not mentioned or addressed, they are irrelevant or without merit. We conclude that petitioners (1) are not entitled to a refund based on the claimed $123,822 capital loss, which

was limited to $3,000 for 2017 (the remainder of which could have been carried forward to 2018); (2) were ineligible for the PTC for the 2017 tax year because their household income exceeded 400% of the federal poverty line; and (3) must repay the APTC received in 2017.

Furthermore, the Court notes that to the extent petitioners claim that paying the deficiency would be a hardship, they are free to explore collection alternatives with the IRS, such as an installment agreement or offer-in-compromise.

To reflect the foregoing,

*Decision will be entered for respondent.*